529 So.2d 727 (1988)
Holly Lynn MERRYMAN, As Personal Representative of the Estate of Larry Ray Merryman, Deceased, Appellant,
v.
Michael MATTHEUS, Robert E. Wyrick, Jr., Cleveland A. McInnis and Clifford Dean Spotts, Appellees.
No. 87-2054.
District Court of Appeal of Florida, Second District.
May 27, 1988.
Rehearing Denied June 22, 1988.
*728 Albert M. Salem, Jr. of Albert Salem and Associates, P.A., Tampa, for appellant.
Ted R. Manry, III of Macfarlane, Ferguson, Allison & Kelly, Tampa, and Thomas J. Roehn, Tampa, for appellees.
LEHAN, Judge.
Plaintiff appeals from a partial summary judgment entered in favor of defendants in this wrongful death case. The trial court concluded as a matter of law that there had been no gross negligence by defendants so as to invoke the exception to the exclusivity of workers' compensation remedies under section 440.11, Florida Statutes (1985). We affirm.
The decedent, of whose estate plaintiff is personal representative, was killed when a load of steel dropped upon him from a malfunctioning crane in his employer's warehouse. The defendants who are appellees in this appeal and who have been sued as co-employees, see Streeter v. Sullivan, 509 So.2d 268 (Fla. 1987), are Robert E. Wyrick, Jr., vice-president in charge of warehouse operations at Tampa Bay Steel (TBS); Cleveland A. McInnis, president of TBS; and Clifford Dean Spotts, warehouse manager of TBS.
The load dropped when a cable on the crane which was carrying the load broke. The cable broke when the crane was caused by the crane operator to be lifted higher than necessary and the limit switch, designed to limit the height of the crane, malfunctioned, thus permitting the crane's block to come into contact with the cable drum.
Appellees Wyrick and Spotts had been advised by Michael Mattheus, an electrical contractor who is a defendant in counts of the complaint not the subject of the partial summary judgment now on appeal, that the limit switch was functioning only intermittently and was to be replaced. They knew also that the switch had malfunctioned several days earlier, causing the crane's load to drop. Mattheus, who at that prior time had repaired the crane and advised of the problem with the limit switch, did not recommend that the crane not be used but indicated to appellees, who were not knowledgeable about crane operations, that the crane should be used with caution to be sure that it was not lifted too high. The employees who worked in that area, including decedent and the crane operator, were so advised. Appellees permitted the continued use of the crane as the work bay involved was the busiest at TBS.
Plaintiff vigorously argues that appellees were grossly negligent because the condition of the crane was extremely dangerous and appellees knew of that condition but nonetheless permitted the crane to continue operating. We cannot agree. The record shows that the crane, if operated properly, would have operated safely. If so operated, there was no clear and present danger. There was danger from the circumstances only if the crane operator disregarded the admonition to use the crane with caution and was negligent in lifting the load too high and the intermittently operating limit switch malfunctioned. The danger was, therefore, no more than a possibility, and appellees, by permitting the continued use of the crane, were not shown to have evinced such conscious disregard for the decedent's safety *729 as is requisite for a finding of gross negligence on their parts. Their conscious disregard of the possibility of danger could under these circumstances be no more than simple negligence.
That another crane located in the same area of the warehouse could have been used instead is not determinative. If, as we have concluded, the trial court was correct that there was no gross negligence in continuing the use of the crane which caused the accident, there was no gross negligence is not using another crane.
In Glaab v. Caudill, 236 So.2d 180, 184 (Fla. 2d DCA 1970), this court generally explained these concepts as follows:
[I]t's logical to assume that at some point along the line in a potential gross negligence situation the composite of circumstances or conditions will present a risk of grave injury which a rational person of mature judgment is simply unwilling to assume. On the lower extreme, to illustrate, negotiating a sharp curve at twenty mph, with chargeable awareness that nine hundred ninety-nine out of a thousand cars safely do so, would unquestionably be a minim [sic] of risk; and taking such a risk, we can say, would not be negligence at all. As speed would increase, however, so of course would the risk, until a point is reached where an accident or injury, as a consequence of careless inattention, oversight or error in judgment, is foreseeably more than a mere possibility. Imprudence at this point would be a careless disregard [emphasis in original] of danger; and it can be said then, we think, that this point would be the predicate for ordinary negligence. But on the high side of a potential gross negligence situation, negotiating that same curve at, say fifty mph, with chargeable awareness that twenty-five per cent of the cars do not [emphasis in original] make it at that speed, might well be a risk a person of mature judgment wouldn't consciously and willingly take (except as might be required in an emergency) notwithstanding that he has a better than 50-50 chance of making it. At this point in the spectrum, we therefore think that a driver should be particularly and keenly alerted to caution [emphasis in original] in approaching that curve at fifty mph. If regardless of the apparent risk, and regardless of the particular alertness called for, a driver voluntarily and consciously attempts to take that curve at fifty mph a jury might very well think he envinced [sic] a "conscious disregard of consequences" to the extent that he knew such action "would probably and most likely" result in a serious accident. [Emphasis added.]
Sullivan v. Streeter, 485 So.2d 893 (Fla. 4th DCA 1986), approved, 509 So.2d 268 (Fla. 1987), cited by plaintiffs, does not convince us to reach a different result. Sullivan, citing Glaab, also required, in order for there to be gross negligence so as to create an exception to the exclusivity of workers' compensation remedies, "a conscious, voluntary act or omission ... which is likely to result in injury." 485 So.2d at 895. In that case plaintiff was a branch manager of a savings and loan association. When originally opened, the branch had had an armed security guard. The guard had been withdrawn by the defendants, the president and senior vice-president of the savings and loan association, for economic reasons. Subsequently, two robberies occurred. Thereafter, a third robbery occurred during which the branch manager was killed and out of which the lawsuit arose. The Fourth District Court of Appeal concluded that a summary judgment ruling that there had been no gross negligence by defendants had been improper.
To the extent that Sullivan might be interpreted as upholding a finding of gross negligence from a co-employee's mere knowledge of the vulnerability of plaintiff employee to the possibility of injury, we would disagree. However, we distinguish Sullivan on the basis that in that case, in contrast to this case, there was considered to have been a likelihood of injury from plaintiff's vulnerability to more than mere danger and to a "clear and present danger," 485 So.2d at 895, from the perception that lightning, in the form of another robbery of a vulnerable bank, may be expected to strike thrice. The apparent expectation of repeated acts of robbery from matters out of defendants' control in that case was *730 significantly different from the possibility of negligence by the crane operator in the case at hand who had been specifically cautioned to avoid the type of occurrence which caused the decedent's death.
We agree with the trial court that Weller v. Reitz, 419 So.2d 739 (Fla. 5th DCA 1982), is analogous to this case. In Weller the plaintiff was a mechanic doing tune-up work on a truck. The defendant, at plaintiff's request, reached in through the window of the truck and turned the key. Because the truck was in gear, it lurched forward and pinned the plaintiff to the wall in front of the truck, breaking his legs. The trial court's summary judgment that there had been no gross negligence to preclude the exclusivity of workers' compensation remedies was affirmed by the Fifth District. The decision in the case at hand to continue operating the crane did not exceed in degree of negligence the decision of the defendant in Weller to start the truck.
Plaintiff cites Cassel v. Price, 396 So.2d 258, 260 (Fla. 1st DCA 1981), for the principle that summary judgment is proper only when it can be determined as a matter of law that reasonable persons cannot arrive at different conclusions and that the facts point to only one possible conclusion. We agree with the implicit conclusion of the trial court in this case that the summary judgment was proper under that principle.
Plaintiff also contends that the trial court erred in not allowing a claim for punitive damages. We do not agree. As the trial court concluded, since there had been no gross negligence by the co-employees, there could be no recovery of punitive damages. See Como Oil Co., Inc. v. O'Loughlin, 466 So.2d 1061 (Fla. 1985); White Construction Co., Inc. v. Dupont, 455 So.2d 1026 (Fla. 1984).
Affirmed.
DANAHY, C.J., and FRANK, J., concur.