PER CURIAM.
In this maritime personal injury action, defendant Juneau Tanker Corporation raises two points on appeal. Plaintiff Raymond C. Sims cross-appeals, arguing that the trial court erred in denying his motion for attorney’s fees. We affirm both points on the main appeal but reverse on the cross-appeal.
With regard to defendant’s first point on appeal, we conclude that the trial court, in granting plaintiffs motion for summary judgment, properly ruled that plaintiff was entitled to the benefit of seaman status under the Jones Act, 46 U.S.C. App. § 688. Our review of the record convinces us that the material facts before the trial court on summary judgment, though somewhat involved, were nonetheless wholly undisputed and pointed only to one possible conclusion. Thus, summary judgment was proper. See Merryman v. Mattheus, 529 So.2d 727, 730 (Fla. 2d DCA 1988).
In determining whether a worker is entitled to seaman status for purposes of the Jones Act, courts consider the following three factors:
*1231 (1) That he is assigned permanently to, or performs a substantial part of his work on, (2) a vessel in navigation and (8) that the capacity in which he is employed, or the duty which he performs, contributes to the function of the vessel or the accomplishment of its mission.
Graham v. Milky Way Barge, Inc., 824 F.2d 376, 389 (5th Cir.1987) (citing Offshore Co. v. Robison, 266 F.2d 769 (5th Cir.1959)). See McDermott International, Inc. v. Wilander, 498 U.S, 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) (approving Robison test adopted by Fifth Circuit). Defendant on appeal does not challenge the trial court’s conclusion under the third factor. Rather, defendant argues that under the first two factors there was evidence from which a jury could have found that plaintiff lacked a sufficient connection to the Overseas Juneau and that the Overseas Juneau was not in navigation at the time of his injury. We do not agree under the instant facts.
Plaintiff worked for a Tampa-based labor pool that contracted with ship owners to supply unskilled laborers for various maintenance tasks. In early July 1989, defendant hired plaintiff and other workers from the labor pool to perform maintenance work on the Overseas Juneau, a 900-foot oil tanker. On July 5, 1989, plaintiff and his coworkers were flown to San Francisco, where they joined the ship. For the next three days, plaintiff and his coworkers, working thirteen to sixteen hours a day while the ship was in port, performed such tasks as ship painting and checking and replacing anodes, which are blocks of zinc placed inside oil tanks to prevent corrosion. They slept and ate all their meals onboard.
On July 9, with plaintiffs and his coworkers still aboard, the ship departed for Portland, Oregon, where it was scheduled to undergo repairs in preparation for its next scheduled trip. While en route to Portland, plaintiff and his coworkers spent twelve to twenty hours a day cleaning the ship tanks. Upon arrival in Portland on July 15, the ship was moored to a wet berth in sheltered water and placed on shore power. Though most of the regular crew were temporarily laid off for the one-month period in which the repairs were being made, plaintiff and his coworkers remained on board, performing such tasks as ship painting and cleaning tanks. During this period they continued to sleep aboard the ship, leaving the ship only for meals.
On July 31, while still in Portland, plaintiff and his coworkers were checking and replacing anodes in the tanks under the direction of the ship’s second mate. A foothold broke while plaintiff was attempting to exit a tank. He fell and injured his knee, but continued working until August 12, when a doctor examined him and determined he was unfit for continued work. Plaintiff then returned to Tampa.
Meanwhile, the ship repairs were completed shortly thereafter. After the ship passed inspection on August 16, it sailed for Valdez on August 20 to take on a load of crude oil. The ship then delivered the crude to San Francisco. For both the Portland/Valdez and Valdez/San Francisco trips, plaintiff’s replacement was aboard the Overseas Juneau, named on the official crew list as an ordinary seaman/tank cleaner.
Contrary to defendant’s position, the evidence does not raise even an inference from which a jury could have found that plaintiff lacked the requisite connection to the Overseas Juneau to qualify as a seaman. Although plaintiff was not a member of the regular crew, there is no dispute that plaintiff was performing work traditionally performed by seamen.[1] Also, there is no dispute that he performed this work aboard the ship, both when it was at sea and when it was moored in Portland. Finally, there is no dispute that but for his injury, he would have continued performing this work during both the Portland/Valdez and Valdez/San Francisco voyages.
*1232 Nor does the evidence raise even an inference from which a jury could have found that the Overseas Juneau, at the time of plaintiffs injury, was not “in navigation” within the meaning of established maritime law. Defendant points out that at the time of the accident, the ship was moored, not operational and in the process of undergoing repairs that took one month to complete. However, there is no dispute that the repairs were preparatory to voyages that plaintiff would have made but for his injuries. See Carumbo v. Cape Cod S.S. Co., 123 F.2d 991, 995 (1st Cir.1941) (ship in navigation when it returns from a voyage and is taken to dry dock preparatory to subsequent trip). Compare Boyd v. Ford Motor Co., 948 F.2d 283, 286 (6th Cir.1991), cert. denied, — U.S. -, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992) (ship on winter lay up). We conclude that a ship in wet dock between regular voyages, undergoing scheduled repairs of a month’s duration, remains “in navigation” as a matter of law.
We find no merit to defendant’s second point on appeal and affirm without discussion. On plaintiffs cross-appeal, however, we reverse on the issue of attorney’s fees. See Royal Caribbean Corp. v. Modesto, 614 So.2d 517 (Fla. 3d DCA 1992).
Affirmed in part; reversed and remanded in part for proceedings consistent herewith.
FRANK, C.J., ALTENBERND, J., and FARNELL, CROCKETT, Associate Judge, concur.

. It is of no moment that he was not a union member and lacked such attributes of seaman status as a Coast Guard license. See Noble Drilling Corp. v. Smith, 412 F.2d 952, 957 (5th Cir.), cert. denied, 396 U.S. 906, 90 S.Ct. 221, 24 L.Ed.2d 182 (1969) (“Since a man does not become a seaman by papers alone, he should not be denied his statutory status as a seaman merely because he is not a paper seaman.”).