COX, JACK S., Associate Judge.
In this worker’s compensation immunity case, an employer appeals a $2.7 million jury verdict and final judgment in favor of an employee who suffered an amputation of a significant portion of his dominant hand while operating a piece of machinery. The accident occurred on August 23, 2005, and is controlled by section 440.11(l)(b)(2), Florida Statutes (2005).
List Industries, Inc., the employer, manufactures steel lockers. In its facility, it uses a variety of different industrial machines to cut, bend, and form the parts used in the manufacturing process. Phi-teau Dalien was an employee operating a large machine called a Press Brake. The Press Brake was built in the 1960s and had never been modified in any substantial way. The Press Brake uses 60 tons of force to bend and shape steel. The operator inserts a sheet of steel into a horizontal slot in the machine. When the steel is properly positioned, the operator activates the machine by using a foot pedal. Activation by the foot pedal causes the Press Brake to push the die into the steel, causing it to bend into the shape of the die. The employee’s activation of the foot pedal while his hand was in the die is the process that caused the injury.
The employer contends that the trial court erred in denying its motion for directed verdict since the employee failed to present “clear and convincing evidence” of each of the three indispensible elements in Section 440.11(l)(b)(2), Florida Statutes (2005). We agree and reverse.
2003 was an important year in this area of the law. That year, the Florida Legislature effectively overruled the case of Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000), when it amended Section 440.11 to codify the “intentional tort exception” to an employer’s workers compensation immunity recognized by the Supreme Court in Turner. In the revised statute, the Legislature mandated that the plaintiff/employee prove the “intentional tort exception” by clear and convincing evidence. Moreover, it replaced a “substantial certainty” standard with the “virtually certain” standard by requiring that “employer knew based upon similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee.” See Pendergrass v. R.D. Michaels, Inc., 936 So.2d 684, 689 n. 1 (Fla. 4th DCA 2006).
The change from “substantial certainty” to “virtually certain” is an extremely different and a manifestly more difficult standard to meet. It would mean that a plaintiff must show that a given danger will result in an accident every — or almost every — time.
Pendergrass further reminds us that while remedial legislation is generally in-terpretéd liberally in favor of the errors to be corrected, the Florida Legislature has specifically rejected such an interpretátion for the Worker’s Compensation Law. Id. at 688; § 440.015, Fla. Stat. (2005).
Because this accident occurred in 2005, this version of the statute controls this case:
Exclusiveness of liability.—
*472 (1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability, including vicarious liability, of such employer to any third-party tort-feasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except as follows:
[[Image here]]
(b) When an employer commits an intentional tort that causes the injury or death of the employee. For purposes of this paragraph, an employer’s actions shall be deemed to constitute an intentional tort and not an accident only when the employee proves, by clear and convincing evidence, that:
1. The employer deliberately intended to injure the employee; or
2. The employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.
§ 440.11, Fla. Stat. (2005). On its face, the statute requires the employee to prove by “clear and convincing evidence” that the employer’s actions constituted “an intentional tort and not an accident.” Proof by clear and convincing evidence of a non-intentional tort is not sufficient to avoid the employer’s statutory immunity.
In adopting the Worker’s Compensation Law, the Legislature made its intent clear:
Legislative Intent. — It is the intent of the Legislature that the Worker’s Compensation Law be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker’s return to gainful reemployment at a reasonable cost to the employer. It is the specific intent of the Legislature that workers’ compensation cases shall be decided on their merits. The workers’ compensation system in Florida is based on a mutual renunciation of common-law rights and defenses by employers and employees alike. In addition, it is the intent of the Legislature that the facts in the workers’ compensation case are not to be interpreted liberally in favor of either the rights of the injured worker or the rights of the employer. Additionally, the Legislature hereby declares that disputes concerning the facts in workers’ compensation cases are not to be given a broad liberal construction in favor of the employee on the one hand or of the employer on the other hand, and the laws pertaining to workers’ compensation are to be construed in accordance with the basic principles of statutory construction and not liberally in favor of either employee or the employer. It is the intent of the Legislature to ensure the prompt delivery of benefits to the insured worker.
§ 440.015, Fla. Stat. (2005).
Assuming an employer’s compliance with the requisite provisions of Chapter 440, the statute gives an employer “immunity from civil suit by the employee, except in the most egregious circumstances.” Bakerman v. The Bombay Co., Inc., 961 So.2d 259, 262 (Fla.2007); see also Turner v. PCR, Inc., 754 So.2d 683, 686 (Fla.2000) (describing employer’s immunity “from common-law negligence suits for employers covered by the statute”); Lovering v. Nickerson, 72 So.3d 780, 781 (Fla. 5th *473 DCA 2011) (describing employers’ immunity as one “from liability”). The system is “based on a mutual renunciation of common-law rights and defenses by employers and employees alike.” Bakerman, 961 So.2d at 261 (quoting § 440.015, Fla. Stat. (2006)). A civil personal injury lawsuit by an employee against an employer under section 440.11 was intended to be the rarest of exceptions to the immunity granted to the employer.
This employee certainly proved that the employer’s conduct was negligent. A negligence claim is supported by the facts. Safety guards for the machine were not used. The foot pedal was covered with grease and debris. No videos were used to educate the employee. Nevertheless, the statute has eliminated the employee’s common law right to bring a negligence action against the employer. The employee’s exclusive remedy is provided for under the Worker’s Compensation Law.
In this case, the employee proved by clear and convincing evidence that there were prior accidents on different machines which performed different functions and which caused both different injuries and similar injuries. But the employee did not prove by clear and convincing evidence that there were prior “similar” accidents on this machine. Given that, the employee did not prove that it was “virtually certain” that operating the Press Brake would result in injury to the employee, as there had been no prior accidents on this machine.
Also, the employee did not prove by clear and convincing evidence that the employee was unaware of the risk, that the danger was not apparent, and that the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.
There are some types of work (and in this case some machines) that are so obviously and inherently dangerous that the danger would be obvious to anyone working in the vicinity. For example, with regard to a commercial wood chipper used by a tree trimming company, a person just has to see it operate to know that it is dangerous. The Press Brake in this case is just such a machine. The employee had seen the Press Brake in action many times and had watched others operating it. There can be no question that it was obvious to the employee that the machine could crush a hand from the times he saw steel being inserted into the Press Brake and the operator activating the foot pedal which caused the 60 ton press to bend the steel. He was trained on the equipment and he was supervised in its operation. He had operated the equipment for more than a month before the accident occurred. The danger had to have been apparent to the employee. Therefore, the employee did not prove by clear and convincing evidence that he was not aware of the risk or that the employer concealed or misrepresented the danger of the Press Brake, as required by section 440.11(l)(b)(2).
Given the posture of the case, the trial court erred by not entering a directed verdict in favor of the employer.
We write separately to note that given the stringent standard required to overcome an employer’s statutory immunity, this issue is amenable to being decided on summary judgment. As Judge Alten-bernd has observed,
The history of the workers’ compensation system demonstrates that the legislature intended to give coworkers and employers immunity from suit except in extraordinary situations. Such immunity not only limits the expense of doing business in Florida over and above the admittedly significant expenses of the workers’ compensation no-fault system, but also helps maintain a better work environment in which coworkers are not *474 constantly in fear of being sued by their fellow employees. The legislature has thus created an exclusive, administrative, no-fault remedy that is unaffected by comparative negligence in exchange for broad immunity from lawsuits for employers and coworkers. The goal of this policy is to avoid lawsuits at the outset, not simply to prevent adverse verdicts against employers and coworkers at the end of lengthy litigation. If the trial courts are to foster these legislative policies, they must serve as gatekeepers at the initial stages of litigation.
Fleetwood Homes of Florida, Inc. v. Reeves, 833 So.2d 857, 864-65 (Fla. 2d DCA 2002) (emphasis added), rev’d on other grounds, 889 So.2d 812 (Fla.2004); see also Reeves, 889 So.2d at 823 (Wells, J., concurring); Fla. R.App. P. 9.130(a)(3)(C)(v) (providing for appellate review of non-final orders which determine “that, as a matter of law, a party is not entitled to workers’ compensation immunity”). The case before us demonstrates how the “quick and efficient” intention of the statute is subverted when the immunity issue was allowed to avoid early determination by the trial court.
Therefore, we reverse and remand to the trial court with instructions to enter directed verdict in favor of the Appellant, List Industries, Inc. and against the Ap-pellee, Phiteau Dalien, individually, and Phiteau Dalien, as parent and natural guardian of Dimitri Dalien, a minor. In light of this resolution, we do not reach the other issue raised by the employer on appeal.

Reversed and remanded with instructions.

GROSS and CONNER, JJ., concur.