CORTINAS, J.
Ernesto Vallejos worked for Professional Aviation Management, Inc., a subcontractor that supplied personnel to general contractor Lan Cargo, S.A., the owner of the warehouse at Miami International Airport. Infinity Cargo Services, Inc., was another subcontractor that supplied personnel to Lan. Vallejos was a forklift operator. His duties did not include taking hoppers (small dumpsters) outside to dump in a larger dumpster. On the day of his accident, Vallejos was asked to do so by Pablo Robaina, an Infinity employee. Robaina was not Vallejos’ supervisor. Ro-baina did not have the security clearance necessary to go out and dump the hopper himself. Robaina showed Vallejos how to dump the hopper using a makeshift rope that allowed the operator to dump the hopper from the cab of the forklift so that the operator did not have to exit the forklift. The rope did not come attached to the hopper but was added later by employees at the warehouse. As Vallejos was returning the hopper, the hopper started to move around. Vallejos wrapped the rope around his hand to steady it. The unattached end of the rope was long and dragged on the ground. It got wrapped around one of the forklift’s tires and jerked Vallejos out of the cab and onto the ground. He suffered minor shoulder and back injuries, but four fingers had to be amputated. He also suffered some psychological injuries and was unable to return to work. Vallejos applied for workers’ compensation benefits. He settled his workers’ compensation case with Professional and its carrier and signed a broad release.
Two years later, he filed the instant case against Lan and Infinity (“appellees”). He alleged two counts of negligence and gross negligence against each and one count of intentional tort against Lan.[1] In general, Vallejos alleged that appellees wrongly modified the hopper, failed to provide adequate safeguards and warnings,[2] and should not have asked him to dump the *548 hopper because he was not trained. Additionally, Vallejos argues that Robaina did not properly instruct Vallejos how to dump the hopper.
The trial court granted summary judgment in favor of the appellees after a hearing. The trial court reasoned that Vallejos had elected the remedy afforded by the workers’ compensation statutes and had not shown that a genuine issue of material fact existed to support a case against the appellees based on exceptions to the workers’ compensation statute. This appeal followed.
ANALYSIS
Workers’ compensation immunity applies to all statutory employers, such as Lan, and subcontractors that provide services in conjunction with a contractor on the same project, such as Infinity. Fla. Stat. §§ 440.10-.il (2003). Vallejos argues that Lan and Infinity are not immune because he did not elect workers’ compensation as his remedy.[3]
Vallejos argues that even if he did elect his remedy, the following exceptions to workers’ compensation immunity apply: 1) Lan committed an intentional tort, 2) Ro-baina, his fellow-employee, was grossly negligent, 3) Robaina was negligent while operating in the furtherance of the same employer’s business but assigned primarily to unrelated works, and 4) Infinity, a subcontractor that shares statutory immunity under section 440.10, was grossly negligent. Fla. Stat. §§ 440.10-.il. All of Val-lejos’ arguments fail; therefore, the trial court properly granted summary judgment as to all of these counts.
This Court’s standard of review is de novo. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
I. Vallejos elected workers’ compensation as his remedy; therefore, Lan and Infinity are entitled to workers’ compensation immunity as to Valle-jos’ negligence claims.
Vallejos argues that he did not express a conscious intent to elect workers’ compensation as his remedy and that his case did not reach a conclusion on the merits. Therefore, he argues, he did not elect his remedy. The cases which examine whether a plaintiff evinces a conscious intent to elect a remedy or whether a case reaches a conclusion on the merits can be divided into two groups: 1) cases where compensability or the injured party’s status as an employee is at issue and 2) cases where the defendant claims that liability under an exception to the statute was either waived or resolved in the workers’ compensation case. Neither of these circumstances apply in the instant case.
a. Compensability is not an issue.
Vallejos elected his remedy by filing a petition for benefits, receiving payments, and negotiating a settlement. All of the following cases that Vallejos cites can be distinguished because they deal with workers’ compensation claims where the compensability of the claim or the status of the employee at the time of the injury was contested:[4] Vasquez v. Sorrells Grove *549 Care, Inc., 962 So.2d 411, 415 (Fla. 2d DCA 2007) (noting that the carrier contested the compensability of the claim and whether Vasquez was an employee); Hernandez v. United Contractors Corp., 766 So.2d 1249, 1252 (Fla. 3d DCA 2000) (holding that because the carrier contested the compensability of the claim and took the position that there was no evidence that the accident arose out of and in the course and scope of Hernandez’s employment, there was no conclusion on the merits); Lowry v. Logan, 650 So.2d 653, 658 (Fla. 1st DCA 1995) (“there remain disputed issues of fact concerning whether Lowry is an [sic] covered employee or an independent contractor and whether he was injured in the course and scope of his employment”); Wright v. Douglas N. Higgins, Inc., 617 So.2d 460, 461-62 (Fla. 3d DCA 1993) (reversing summary judgment because there was no determination that plaintiff was an employee in the workers’ compensation case); Wishart v. Laidlaw Tree Serv., Inc., 573 So.2d 183, 184 (Fla. 2d DCA 1991) (“The critical issue of fact which must be determined by the trial judge is whether the employee was injured in the course and scope of his employment.”); Velez v. Oxford Dev. Co., 457 So.2d 1388, 1391 (Fla. 3d DCA 1984) (reversing summary judgment because there was no determination that plaintiff was an employee in the workers’ compensation case).
There was no question that Vallejos was injured during the scope of his employment. The signed release states that Val-lejos “represents and affirms that all accidents, injuries, and occupation diseases known to have occurred or have been sustained while employed by the Employer have been revealed.” Vallejos admits that his entitlement to workers’ compensation benefits was not a contested issue. Unlike many of the aforementioned cases, Professional and its carrier never denied Valle-jos’ claim.[5]
There are numerous cases which hold that when an employee is injured on the job and then applies for and receives workers’ compensation benefits, a subsequent negligence suit is barred. Yero v. Miami-Dade Cnty., 838 So.2d 686, 687 (Fla. 3d DCA 2003); Townsend v. Conshor, Inc., 832 So.2d 166, 167 (Fla. 2d DCA 2002); Delta Air Lines, Inc. v. Cunningham, 658 So.2d 556, 557 (Fla. 3d DCA 1995); Coney v. Int’l Minerals & Chem. Corp., 425 So.2d 171, 171-72 (Fla. 2d DCA 1983).
Not only did Vallejos file an initial petition, but he filed six supplemental petitions. Professional and its carrier paid all of his medical bills. Vallejos received a total of $267,279.84, including the lump sum settlement. Lan and Infinity should not be held liable in a negligence action for the same injury already fully compensated by Professional.
Lastly, Vallejos’ release did not contain a clause stating that the release should not be construed as an election of remedies, unlike the release in Vasquez. Vasquez, 962 So.2d at 414. Therefore, Vallejos did not reserve his right to elect another remedy. Vallejos argues that this does not matter because his signed release contained the following clause: “[T]his release is in no way to be construed as an admission of any wrongdoing or liability on the part of the Releasees.” However, all this statement means is that there has been no determination on the merits as to neglect or intent for purposes of determin *550 ing whether a claim can be made under an exception to statutory immunity. See infra section I.b. In a workers’ compensation case, liability is irrelevant if the employee is covered.[6]
Florida’s workers’ compensation system was designed ... for workplace injuries that have occurred in the course and scope of employment.... [It] provides employees ... benefits, without regard to fault, for losses resulting from workplace injuries in exchange for the employee relinquishing his or her right to seek certain common law remedies from the employer....
Jones v. Martin Elecs., Inc., 932 So.2d 1100, 1104 (Fla.2006) (emphasis added). “Where an injury is suffered in the course and scope of employment, worker’s compensation is the exclusive remedy for recovery against the employer.” Wishart, 573 So.2d at 184 (citing Fla. Stat. § 440.11).
[W]hether the injury to the employee is caused by “gross negligence”, “wanton negligence”, “simple negligence” passive or active, or no negligence at all of the employer, is of no consequence. There is no semblance of suggestion in these statutes that the Legislature intended to make any distinction in degrees of negligence so far as the employer’s immunity is concerned and we see no reason or logic in any distinction.
Seaboard Coast Line R.R. v. Smith, 359 So.2d 427, 429 (Fla.1978).
b. Vallejos did not waive his right to sue under exceptions to the statute.
Vallejos relies heavily on Jones for the proposition that workers’ compensation immunity does not apply at all if the workers’ compensation case was not litigated to a conclusion on the merits or the plaintiff did not show a conscious intent to waive his remedies. He misapplies Jones ’ holding:
[W]e hold that an employee who is injured in the workplace during the course and scope of his or her employment and receives workers’ compensation benefits, but does not pursue a compensation claim to a conclusion on the merits, may file an action against an employer for that workplace injury under these circumstances if the employer’s conduct is to the level of intentional conduct substantially certain to result in injury for which workers’ compensation immunity is not available.
Jones, 932 So.2d at 1105 (emphasis added). Vallejos improperly relies on Jones because Jones dealt with waiving the right to pursue an action under an intentional tort theory.[7] All Jones means for Vallejos is that he can still pursue a civil action based upon an exception to the exclusivity of the workers’ compensation statute because none of those claims were litigated in the workers’ compensation case.[8] See *551 Petro Stopping Ctrs., L.P. v. Gall, 23 So.3d 849, 852 (Fla. 5th DCA 2009) (holding that Gall waived her right to sue for an intentional tort because her mediated settlement was a conclusion on the merits due to the fact that the settlement agreement provided that Petro accepted Gall as permanently and totally disabled); Vasquez, 962 So.2d at 413-14 (emphasis added) (characterizing Jones’ holding as simply meaning that “an employee who had received workers’ compensation benefits for a workplace injury but who had no pursued the compensation case to a conclusion on the merits was not estopped from later filing a civil tort claim if he could show that an exception to the workers’ compensation statute existed”).
Although Vallejos was able to pursue a civil action based upon exceptions to the workers’ compensation statute, the trial court correctly granted summary judgment in favor of the appellees because the “gross negligence” and “unrelated works” exceptions do not apply as a matter of law, and taking the facts in the light most favorable to Vallejos, he cannot prove that Infinity was grossly negligent or that Lan committed an intentional tort.
II. The “gross negligence” and “unrelated works” exceptions under section 440.11(l)(b)(2) do not apply because Vallejos did not sue Robaina, the fellow-employee, and any negligence on the part of Robaina is not imputed to Lan or Infinity.
The “gross negligence” and “unrelated works” exceptions found in section 440.11(l)(b)(2) are inapplicable to Vallejos’ suit as a matter of law because the statute expressly states that the exceptions apply only to fellow-employees. Vallejos does not cite any case law in support of imputation.[9] The statute does not mention any imputation of liability onto the employer and specifically states that immunity includes vicarious liability.[10] Because Robai-na was not included in the lawsuit, there is no reason to analyze whether he was grossly negligent or involved in unrelated works.
III. Taking the facts in the light most favorable to the plaintiff, Vallejos cannot prove that Infinity was grossly negligent under section 440.10(l)(e)(2).
A subcontractor that does not employ the plaintiff but is employed by the same general contractor as the plaintiff also enjoys immunity under the workers’ compen *552 sation statute unless “[t]he subcontractor’s own gross negligence was ... the major contributing cause of the injury.” Fla. Stat. § 440.10(1)(e) (2).
Gross negligence requires: 1) circumstances constituting an imminent or clear and present danger amounting to a more than normal or usual peril, 2) knowledge or awareness of the imminent danger on the part of the tortfeasor, and 3) an act or omission that evinces a conscious disregard of the consequences. Kline v. Rubio, 652 So.2d 964, 965-66 (Fla. 8d DCA 1995). Summary judgment was appropriate because Vallejos did not present evidence that a genuine issue of material fact exists as to these three elements.
a. Imminent or clear and present danger.
Vallejos did not establish that the circumstances surrounding the incident constituted an imminent or clear and present danger. The conduct in this case might possibly result in injury; however, it cannot be said that the conduct would probably and most likely result in injury. See Carraway v. Revell, 116 So.2d 16, 22-23 (Fla.1959) (comparing negligence and gross negligence). Robaina testified in his deposition that Lan forklift operators have been dumping the hoppers at issue with makeshift ropes multiple times a day for at least five years without incident. Vallejos provided no evidence of any prior accidents or injuries at Lan. Using a makeshift rope to dump the hopper “may have been more dangerous than another method. On the other hand, it was a procedure that had been successfully performed on many occasions over many years.” Fleetwood Homes of Fla. v. Reeves, 833 So.2d 857, 867-68 (Fla. 2d DCA 2002), rev’d on other grounds, 889 So.2d 812 (2004). “[T]he numerous successful performances of the challenged procedure show that a risk of accident ... was far from imminent. This is not a case in which the employer continued to use the procedure after earlier mishaps....” Id. at 868. See also Sullivan v. Streeter, 485 So.2d 893, 895 (Fla. 4th DCA 1986) (reversing summary judgment because the plaintiff provided evidence that the employer had been robbed several times).
Case law does not support Vallejos’ argument that modifying a piece of machinery in such a way as to increase its dangerousness always amounts to gross negligence. For example, in Kline, 652 So.2d at 965, the plaintiff sued her supervisor for gross negligence under a different subsection of the statute. See Fla. Stat. § 440.11(1)(b)(2) (excluding from immunity supervisors who are grossly negligent in the course of his or her managerial duties). The plaintiff was injured while using a meat tenderizer that was not bolted down as it was designed to be. The safety cover and the manufacturer’s warnings had been removed, and the machine had been repaired in a way that bypassed the emergency cut-off switch. Kline, 652 So.2d at 965. We held that “although the corporate defendant was certainly negligent in its cavalier attitude toward the safety of its employees,” the allegations were not sufficient to meet the standard of gross negligence. Id. at 965-66.
In Merryman v. Mattheus, 529 So.2d 727 (Fla. 2d DCA 1988), another case that dealt with section 440.11(1)(b)(2), the plaintiff, the crane operator, was killed when a load of steel dropped on him after the crane’s cable broke. Id. at 728. The cable broke because the plaintiff lifted the crane higher than necessary, and the limit switch, which was designed to prevent the crane from being lifted too high, malfunctioned. The defendants had been advised previously that the limit switch was mal *553 functioning, and the crane’s load had even dropped once before. Id Nevertheless, the Second District held that the defendants’ conduct amounted to nothing more than negligence because if the plaintiff had operated the crane properly, there would have been “no clear and present danger. ... The danger was, therefore, no more than a possibility....” Id. In the instant case, Vallejos knew he had never before emptied the hopper and that he was not trained to do so. Robaina was not his supervisor. Vallejos testified in his deposition that he was just doing Robaina a favor and that he regretted doing something he was not meant to be doing. Had Vallejos said no, or not wrapped the rope around his hand, the accident would not have occurred.[11] The likelihood of danger was no more than a possibility.
b. Knowledge of the imminent danger.
Vallejos presented no evidence to support his claim that Infinity had knowledge or awareness of the alleged imminent danger. Villalta v. Cornn International, Inc., 109 So.3d 278, 279 (Fla. 1st DCA 2018), is instructive because it shows the lack of evidence submitted by Vallejos in the instant case. Villalta worked for a drywall subcontractor. The defendant, an HVAC subcontractor, cut holes in the floor where Villalta was working and failed to cover them up. Villalta was working on a scaffold when the wheel of the scaffold went into one of the holes, causing the scaffold to topple over, and Villalta fell to his death. Id. The HVAC subcontractor’s manager testified that he knew the holes created a risk of serious injury or death if not properly covered. Id. at 280. There was also evidence that the general contractor had contacted the HVAC subcontractor about the holes. Id. at 279. The First District reversed summary judgment and held that the plaintiff had presented a prima facie case of gross negligence sufficient to create a jury question. Id. The evidence demonstrated that the subcontractor knew about the imminent danger.
In the instant case, depositions show that Infinity did not purchase the hopper, and there was no evidence submitted that Infinity was aware that additional safety features were available for purchase if a rope was added. There is no evidence that Lan gave Infinity instructions to make the hopper safer. Additionally, the fact that the hopper had been dumped with a makeshift rope on prior occasions without injury creates an element of doubt as to Infinity’s knowledge of the likelihood of injury. See Courtney v. Fla. Transformer, Inc., 549 So.2d 1061, 1065 (Fla. 1st DCA 1989). See also Marquez, 632 So.2d at 85 (reversing summary judgment because the plaintiff presented evidence that the defendant was responsible for the machine’s maintenance and knew that other employees had been injured due to the lack of a guard on the machine).
c. Act or omission that evinces a conscious disregard of the consequences.
Vallejos argues that Infinity’s conduct constituted a conscious disregard for his safety because Robaina never should have *554 asked Vallejos to dump the hopper in the first place, as he had never done so before. Vallejos also argues that Robaina failed to properly advise him how to dump the hopper and not to wrap the rope around his hand or use it to hold the hopper steady.
However, these acts do not demonstrate a conscious disregard for Vallejos’ safety. It was nothing more than an accident or simple negligence that Robaina happened to ask Vallejos, who did not object to dumping the hopper. Vallejos testified that he knew a long length of rope was hanging down from the hopper and dragging on the floor. Robaina’s failure to warn of such an obvious hazard cannot be said to demonstrate a conscious disregard of Vallejos’ safety.
Lastly, Vallejos argues that Infinity, as the business that controlled the hopper, had a duty to maintain the hopper in a safe condition and provide warnings of dangerous conditions. However, as previously stated, dumping the hopper with the makeshift rope was not an imminently dangerous condition. See Merryman, 529 So.2d at 728 (permitting the continued use of machinery that creates the risk of a possible injury does not show a conscious disregard for safety). Furthermore, this argument is not supported by the record, which shows that Lan was responsible for the repair and maintenance of the hoppers. Lan purchased the hopper, so it was Lan that failed to purchase the safety retaining chain, rope cleat for storage, rope trip instruction label, and general warning labels in Spanish.
IV. Lan’s conduct did not rise to the level of an intentional tort.
Workers’ compensation immunity applies to every employer unless the employee can prove, by clear and convincing evidence, that:
the employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.
Fla. Stat. § 440.11(1)(b).
Vallejos did not present clear and convincing evidence that Lan engaged in conduct that it knew was virtually certain to result in injury. This standard is very hard to meet because liability under section 440.11 “was intended to be the rarest of exceptions to the immunity granted to the employer.” List Indus. v. Dalien, 107 So.3d 470, 473 (Fla. 4th DCA 2013). Therefore, “this issue is amenable to being decided on summary judgment.” Id.
The only evidence Vallejos submitted in support of Lan’s knowledge of the dangerousness of the hopper was the affidavit from the employee of the hopper manufacturer who stated that safety parts and warning labels for the hopper were available for purchase. Vallejos’ own expert merely stated that Lan failed to maintain a safe workplace. See C.W. Roberts Contracting, Inc. v. Cuchens, 10 So.3d 667, 670 (Fla. 1st DCA 2009) (noting the lack of expert opinion as to the virtually certainty); Cabrera v. T.J. Pavement Corp., 2 So.3d 996, 1001 (Fla. 3d DCA 2008) (noting that the plaintiffs two experts concluded that the conditions were such that injury or death was substantially certain); Pendergrass v. R.D. Michaels, Inc., 936 So.2d 684, 693 (Fla. 4th DCA 2006) (noting that the expert’s affidavit merely opined that the defendants were negligent). However, the test is not whether the injury was preventable. Bourassa v. Busch Entm’t *555 Corp., 929 So.2d 552, 559 (Fla. 2d DCA 2006). Lan’s knowledge of possible risks and its failure to make the hopper “more safe” is not sufficient to establish than Lan committed an intentional tort. Id.
The possibility of injury in the instant case does not satisfy the “virtually certain” standard. “Virtually certain” means “that a plaintiff must show that a given danger will result in an accident every — or almost every — time.” List Industs., 107 So.3d at 471. In List, the employee was injured on a negligently maintained machine that was missing safety guards. Also, the employee did not receive adequate training. Nevertheless, the Fourth District held that the employer’s conduct did not rise to the level of an intentional tort because the employee did not submit evidence that there had been prior accidents on that particular machine. Id. at 473. Likewise, Vallejos did not submit any evidence of prior accidents. In fact, the record shows that Lan’s forklift operators have been using these hoppers modified with makeshift ropes daily for at least five years without incident. Using an objective test, continued use of makeshift ropes is not virtually certain to result in injury. If not wrapped around a hand and dragged on the floor, use of makeshift ropes is relatively safe. See Turner v. PCR, Inc., 754 So.2d 683, 688 (Fla.2000) (analyzing likelihood of danger under an objective test).
Finally, Vallejos did not prove by clear and convincing evidence that he was unaware of the risk because the danger was not apparent or that Lan deliberately concealed or misrepresented the danger so as to prevent Vallejos from exercising informed judgment about whether to perform the work.[12] First of all, Vallejos testified that he knew a long length of rope was hanging down from the hopper and dragging on the floor, so he was aware of the risk. See List Indus., 107 So.3d at 473 (noting obviousness of danger as a factor to consider). Secondly, Lan’s failure to train or warn of obvious dangers does not amount to concealing or misrepresenting the danger so as to prevent Vallejos from exercising informed judgment. In Lawton v. Alpine Engineered Products, Inc., 498 So.2d 879, 880 (Fla.1986), receded from, by Turner, 754 So.2d at 691 n. 8,[13] the Florida Supreme Court held that an employer who ignores manufacturer’s warnings, does not provide safety guards, and does not train operators about the machine’s dangers may be grossly negligent but does not commit an intentional tort.
Vallejos did not establish by clear and convincing evidence that Lan engaged in conduct that it knew was virtually certain to result in Vallejos’ injury or that Vallejos was unaware of the risk. Therefore, the trial court properly granted summary judgment in Lan’s favor.
CONCLUSION
We affirm the trial court’s order granting summary judgment in favor of appel- *556 lees as to all counts. The negligence claims were barred due to workers’ compensation immunity. Summary judgment was proper as to the other claims because Vallejos did not demonstrate that an issue of material fact existed as to whether Infinity was grossly negligent or Lan committed an intentional tort.
Affirmed.

. The fourth amended complaint substituted Vallejos’ son as the plaintiff. Vallejos passed away during the case due to causes not related to his workplace injuries.

. Vallejos filed an affidavit of an employee of the hopper manufacturer. The affidavit states that a factory-made rope was available for purchase, as well as a safety chain, rope cleat, and warnings to be affixed to a hopper that had a rope attachment. Lan did not purchase these additions when it bought the hopper.

. Vallejos also argues that the release, by its terms, releases only Professional and its carrier from liability. However, the workers’ compensation statute applies to all statutory employees, not just those that were a party to the workers’ compensation case. Fla. Stat. § 440.10.

. An election of remedies presupposes a right to at least two viable options. Velez v. Oxford Dev. Co., 457 So.2d 1388, 1391 (Fla. 3d DCA 1984). However, if the plaintiff is not an employee or is injured outside the scope or course of employment, he does not have a right to workers’ compensation. Fla. Stat. *549 § 440.09 (2003). Thus, there is a need for a determination as to the injured party's status.

. Apparently, no party argued that Vallejos was not covered because he was injured while performing a task that was not part of his normal job duties.

. Vasquez and Hernandez can be distinguished on these grounds. The reservation of liability in the settlement agreements was crucial in those cases because the employers contested whether Vasquez and Hernandez were covered employees.

. The Florida Supreme Court held that there was no conclusion on the merits because "[t]he issue of whether the incident which resulted in Mr. Jones's injuries was compen-sable or caused by neglect or intent was not litigated pursuant to this petition.” Id. at 1107. Additionally, the Court held that Jones’ conduct “did not amount to such a clear overt act evincing a waiver of all common law intentional tort remedies.” Id. (emphasis added).

.The record reflects that Vallejos did not litigate whether statutory exceptions applied in his workers' compensation case. Vallejos submitted evidence that he had hired an attorney to pursue the tort action in civil court *551 while the workers’ compensation case was ongoing. Furthermore, Vallejos’ settlement released Professional and its carrier “from any and all liability for the payment or provision of any class of benefits, of whatever kind or classification available under the Florida Workers’ Compensation Law.”

. Vallejos argues that Holmes County School Board v. Duffell, 651 So.2d 1176 (Fla.1995), allows for imputation of liability to the employer. However, Vallejos seems to ignore one of the key reasons for the holding in Holmes: sovereign immunity. The plaintiff was allowed to pursue his claim against the school board due to the negligence of his fellow-employee, despite the fact that he had received workers’ compensation from the school board, because Florida’s sovereign immunity statute immunized the public fellow-employee from personal liability. Therefore, the school board acted as a surrogate defendant. Id. at 1179. Holmes is inapplicable to the instant case.

. See Taylor v. Sch. Bd. of Brevard Cnty., 888 So.2d 1, 7 (Fla.2004) (Lewis, J., concurring in result) (noting that the "unrelated works exception to the rule of general immunity applies only in the co-employees context, and application of the provision does not result in the loss of general immunity by an employer”).

. Vallejos’ own expert did not state in his affidavit that use of the makeshift rope, without the safety features or warnings, constituted an imminent or clear and present danger. The affidavit simply stated that Infinity failed to maintain a safe workplace. This is not helpful in distinguishing between negligence and gross negligence. See, e.g., Marquez v. Heim Corp., 632 So.2d 85, 85 (Fla. 3d DCA 1993) (reversing summary judgment because plaintiff’s expert testified that using the machine without a guard created a clear and present danger to the operator).

. See Bakerman v. Bombay Co., 961 So.2d 259, 265 (Fla.2007) (holding that concealment is just one factor to consider and is not a mandatory element).

. When Lawton was decided in 1986, the statute used the "substantially certain” standard. The Lawton court announced that "substantially certain” was the same as "virtually certain.” Turner receded from this holding and held that the facts in Lawton were sufficient to support an allegation of substantial certainty of injury. However, in 2003, the legislature amended the statute and changed the standard to "virtually certain.” Because Lawton used the "virtually certain” standard, this Court can compare the facts of that case to the instant case. Vallejos, on the other hand, cites numerous cases that apply the less strict "substantially certain” test. See, e.g., Casas v. Siemens Energy & Automation, Inc., 1 So.3d 294, 301 n. 6 (Fla. 3d DCA 2009).