SILVERMAN, D.E., Associate Judge.
Victor Lizarraga (“the decedent”) died from injuries he received when he was struck by a 2000-pound steel column while working at a construction site. Eva Santa-maría, the decedent’s wife, on behalf of herself and their two children (collectively “Appellees”), filed a wrongful death action against various defendants, including the general contractor, R.L. Haines Construction, LLC (“R.L. Haines”). R.L. Haines raised immunity pursuant to the Workers’ Compensation Law, chapter 440, Florida Statutes (2010), as a defense. The trial court found that an exception to workers’ compensation immunity applied and presented the case to the jury, which rendered verdicts in favor of Appellees. R.L. Haines appeals, contending that the trial court erred in holding that the exception to workers’ compensation immunity applies in this case. We agree and reverse. We conclude that Appellees’ cross-appeal on an evidentiary issue lacks merit and decline further discussion on this issue.
R.L. Haines contracted to build a 200,-000 square foot expansion of an existing warehouse. It subcontracted all of the steel work on the project to Metal Bilt, Inc. (“Metal Bilt”). At the time he was struck, the decedent was working as a foreman for Metal Bilt. Part of Metal Bilt’s scope of work on the project was to erect steel -columns to support the building. Each column stood thirty-three feet *530 high and weighed over 2000 pounds. The columns were attached to bolts anchored to a concrete base by an epoxy adhesive. Before Metal Bilt employees could install the columns, the epoxy adhesive had to cure for a certain amount of time, depending on the temperature of the base concrete. According to the epoxy installation instructions, loads were not to be applied until the cure time had passed.
On January 13, 2010, Metal Bilt secured several anchor bolts to concrete slabs with epoxy adhesive. The epoxy installation instructions called for seventy-two hours of drying time. R.L. Haines nonetheless instructed Metal Bilt employees to begin setting the steel columns on January 15, 2010, after only forty-four hours of drying time. Metal Bilt erected four columns that morning. While the decedent was tightening a wire attached to one of the columns, the column fell on him, causing his death.
Appellees sued R.L. Haines, arguing that the facts of this case fall within the intentional tort exception to workers’ compensation immunity, as set forth in section 440.11(l)(b)2., Florida Statutes (2010). At trial, Appellees asserted that R.L. Haines’s decision to allow Metal Bilt employees to set the steel columns before the epoxy used to secure the anchor bolts had fully cured caused the decedent’s death. They further alleged that R.L. Haines knew that the failure of the epoxy to fully cure could lead to the collapse of a column and the collapse of a column was virtually certain to injure or kill the employee on whom it fell. The jury awarded Appellees a total of $2.4 million.
Florida’s Workers’ Compensation Law sets forth a comprehensive scheme intended “to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker’s return to gainful reemployment at a reasonable cost to the employer....” § 440.015, Fla. Stat. (2010). This statutory scheme “is based on a mutual renunciation of common-law rights and defenses by employers and employees alike.” Id. “Injured employees who fall within the scope of its provisions are to be swiftly provided compensation and necessary medical benefits by the employer, irrespective of fault as a cause of the injury.” Bakeman v. The Bombay Co., 961 So.2d 259, 261 (Fla.2007). Under this modified no-fault system, employers in compliance with the Workers’ Compensation Law are immune from their employees’ common law negligence actions for damages arising from work-related injuries. Id. at 262. The statute provides employers “immunity from civil suit by the employee, except in the most egregious circumstances.” [1] Id.
There are exceptions to an employer’s workers’ compensation immunity. In Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000), the Florida Supreme Court reaffirmed pri- or holdings that recognized an exception to employers’ immunity where the employer “exhibite[d] a deliberate intent to injure or engage[d] in conduct which is substantially certain to result in injury or death.” Id. at 687 (second emphasis added) (quoting Fisher v. Shenandoah Gen. Constr. Co., 498 So.2d 882, 883 (Fla.1986)). As a result of Turner, the Legislature amended the exception language by enacting section 440.11(1)(b) in 2003. Among other things, the amendment narrowed the exception standard by changing from the “substantially certain” standard identified in Turner to a “virtually certain” standard.[2]
*531 Section 440.11(1), Florida Statutes, sets forth exceptions to an employer’s workers’ compensation immunity. It reads, in relevant part, as follows:
440. 11 Exclusiveness of liability.—
(1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability ... except as follows:
[[Image here]]
(b) When an employer commits an intentional tort that causes the injury or death of the employee. For purposes of this paragraph, an employer’s actions shall be deemed to constitute an intentional tort and not an accident only when the employee proves, by clear and convincing evidence, that:
1. The employer deliberately intended to injure the employee; or
2. The employer engaged in conduct that the employer knew, based on pri- or similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.
§ 440.11(1), Fla. Stat. (2010) (emphasis added).
The current “virtually certain” statutory standard has been applied in varying factual scenarios. In List Industries, Inc. v. Dalien, 107 So.3d 470 (Fla. 4th DCA 2013), an employee operating a press brake (a large machine used to cut, bend and shape steel) sustained injuries resulting in the amputation of a significant portion of his dominant hand. After the court found that the section 440.11(l)(b)2. exception applied, the jury awarded the plaintiff $2.7 million. Id. at 471. Upon the employer’s appeal, the Fourth District found that the employee had failed to establish any of the elements necessary for application of the exception. It concluded that the trial court erred by failing to grant a directed verdict where “[t]he employee did not prove that it was ‘virtually certain’ that operating the Press Brake would result in injury to the employee, as there had been no prior accidents on this machine.” Id. at 473. In comparing the Turner substantially certain standard to the post-Turner virtually certain standard, the Fourth District stated that “[t]he change from ‘substantial certainty’ to ‘virtually certain’ is an extremely different and a manifestly more difficult standard to meet. It would mean that a plaintiff must show that a given danger will result in an accident every — or almost every — time.” Id. at 471. Although the Fourth District did not quantify the likelihood represented by the “virtually certain” standard,[3] it described the statutory requirements as being so “stringent” as to make the issue often amenable to disposition by summary judgment.[4] Id. at 473.
*532 Other cases have also characterized the virtually certain standard as extremely difficult to overcome. In Gorham v. Zachry Industrial, Inc., 105 So.3d 629, 634 (Fla. 4th DCA 2013), the Fourth District observed that the Legislature, “adopted an extremely strict exception which, we suspect, few employees can meet. To date, we have not found, nor has a case been cited to us, where an employer has lost its immunity for its conduct.” In Gorham, an employee was significantly injured when the wind caused a wall he was lifting with a crane to move while the employee’s arm was wrapped around a tag line attached to the wall. Id. at 630-31. The employee sued the employer, asserting the section 440.11(1)(b)2. exception to workers’ compensation immunity. There was extensive deposition testimony about the wind speeds and whether the employer knew that ’working in those conditions was dangerous. Id. at 631-32. On appeal, the Fourth District upheld summary judgment for the employer, concluding that “[tjhere is no evidence that such a lift would with virtual certainty cause injury. Indeed, that afternoon the lift was performed without any injuries, even in increasing wind speeds.” Id. at 634.
Similarly, in Boston ex rel. Estate of Jackson v. Publix Super Markets, Inc., 112 So.3d 654 (Fla. 4th DCA 2013), the Fourth District affirmed summary judgment in favor of an employer in an action brought by the estate of a deceased employee. In that case a tractor trailer backed into the employee, crushing him between the trailer and the warehouse dock pad. The employee was not visible to the tractor’s operator and the trailer’s backup alarm was inoperable. Id. at 655. Citing List Industries, the Fourth District found the virtual certainty standard had not been met, thus the section 440.11(1)(b)2. exception did not apply. Id. at 658. The court explained that “there is no evidence that prior similar accidents occurred ... [and a] lack of a backup alarm does not with virtual certainty result in injury. While it may make injury more likely, the statute demands far more.” Id.
In Vallejos v. Lan Cargo, S.A., 116 So.3d 545 (Fla. 3d DCA 2013), the Third District reiterated the List Industries formulation as to “virtual certainty.” There, the court upheld summary judgment entered in favor of the employer of an employee who was injured while using a rope to fasten a hopper (a small dumpster) to a forklift. Id. at 547. In evaluating the likelihood of injury resulting from this practice, the Third District noted the absence of prior similar accidents for a period of at least five years despite the daily use of “hoppers modified with makeshift ropes.” Id. at 555.
Based on the previously described standard, Appellees were required to establish, among other elements, that as a result of the shortened epoxy cure time, the column was virtually certain to fall and injure the decedent. This Court must, therefore, review the facts and circumstances of this case to determine whether the evidence was sufficient to satisfy this “extraordinarily high” standard. See Boston, 112 So.3d at 657. A review of the record shows that the likelihood that the shortened cure time would result in the column falling and killing the decedent was no greater than the likelihood that the *533 employees in Gorham, List Industries, Boston and Vallejos would be injured as a result of their respective employer’s conduct.
Accepting the specific facts of the instant case in the light most favorable to Appellees, the evidence did not establish that it was virtually certain that the decedent would be injured or killed as a result of the resumption of work before the epoxy had fully cured. The record is devoid of evidence of prior similar accidents. Moreover, the remaining three columns in the set — all of which were subject to the same shortened curing period — remained anchored to the base and standing upright.[5] The fact that R.L. Haines would have prevented the column from falling by stopping work is insufficient as “the test is not whether the injury was preventable.” Vallejos, 116 So.3d at 554.
In addition, the expert testimony adduced by Appellees did not establish that the shortened cure time would be virtually certain to result in death or injury to the decedent. Even if it could be inferred that the shortened cure time was virtually certain to cause the column to fall,[6] there was no expert testimony from which it could be reasonably inferred that the column would fall at a time, in a direction, and in a manner that was virtually certain to injure or kill an employee.
Likewise, the cumulative inevitability of the accident occurring is not sufficient to sustain the verdict. Appellees argue that if the employer’s course of conduct were replicated, it is virtually certain that on “some occasion” the column would fall and cause injury to an employee. Acceptance of the Appellees’ reasoning would convert a merely potentially dangerous condition into a virtual certainty and do violence to the legislative intent underpinning the workers’ compensation system in this state. We reject this contention. As the Fourth District explained,
[A]ny modestly dangerous activity at a workplace that is repeated often enough or long enough will eventually result in an accident. Although the concept of “gross negligence” examines the combination of circumstances to evaluate the relevant risk, it does not add together or cumulate the individual probabilities of an accident on each occasion to reach a conclusion that an accident is inevitable or that a risk is inordinately high.
Boston, 112 So.3d at 658 (quoting Fleetwood Homes of Fla., Inc. v. Reeves, 833 So.2d 857, 868 (Fla. 2d DCA 2002)).
In this case, virtual certainty of the decedent’s death may not be inferred either from R.L. Haines’s conduct or from the fatal injuries the decedent sustained. The standard set forth in section 440.11(l)(b)2. requires events to be viewed retrospectively in order to determine whether the injury actually sustained was virtually certain to have occurred as a result of the employer’s conduct. It would erode the statutory standard for overcoming workers’ compen *534 sation immunity to indulge an inference of virtual certainty from the fact that the employee was injured or killed. Similarly, R.L. Haines’s conduct and the potential danger that it creates, standing alone, are insufficient to establish the requisite likelihood that an employee would be injured or killed.[7] However egregious R.L. Haines’s conduct was in this case, absent clear and convincing evidence that the decedent’s death was virtually certain to occur as a result of that conduct, the verdicts cannot stand.[8]
REVERSED.
EVANDER, J., concurs.
COHEN, J., dissents with opinion.

. It was undisputed that R.L. Haines was the decedent’s "statutory employer” entitled to qualified immunity pursuant to sections 440.10 and 440.11, Florida Statutes (2010).

. Notably, Turner recognized that some cases *531 had suggested that the "substantial certainty” test required a showing of "virtual certainty” and then receded from that language. 754 So.2d at 687, n. 4.

. One law review article has quantified the term "virtually certain” as having a probability of ninety percent. See John T. Burnett, The Enigma of Workers' Compensation Immunity: A Call to the Legislature for a Statutorily Defined Intentional Tort Exception, 28 Fla. St. U. L. Rev. 491, 517 (2001).

. List Industries explained that trial judges should serve as gatekeepers at the initial stages of litigation "to fulfill the purposes of the Workers’ Compensation Law.” 107 So.3d at 474 (quoting Fleetwood Homes of Fla., Inc. v. Reeves, 833 So.2d 857, 864-65 (Fla. 2d DCA 2002), rev'd on other grounds, 889 So.2d 812 *532 (Fla.2004)). Except to note that the virtually certain standard is not "illusory or unattainable,” the dissent does not advance any formulation different than that set forth in List Industries. It is incumbent on this Court to apply the standard set forth in the statute and not to lower the bar because the Legislature excepted employers’ workers' compensation immunity only in what may be remote or hypothetical circumstances.

. There was evidence adduced at trial that a deficient mixture of the epoxy failed to bond the column’s anchor bolts to the concrete. R.L. Haines was not responsible for mixing the epoxy and a deficient mixture would not have been remedied by a longer curing period.

. For example, Metal Bilt’s project manager testified that if anchor bolts were not properly affixed to the concrete, it was "more than certain” that the column would fall and injure "someone.” This opinion, quoted by the dissent, does not refer to causation by the shortened curing time rather than an unrelated failure of the epoxy adhesive, the alternative cause for which there was evidentiary support. Nor does it address the likelihood of the falling column injuring the employee, as opposed to the certainty of "someone” being injured.

.The dissent observes that R.L. Haines ignored the "red flag” raised by the movement of an anchor bolt on another column in the set, misrepresented the danger and gave the employees a false assurance of safety. However justifiable the dissent's outrage over R.L. Haines’s conduct may be, the issue is not whether it was virtually certain that the employer exposed the employees to danger. See Vallejos, 116 So.3d at 555 (applying "an objective test” to determine whether danger was virtually certain to result in injury to employee).

. As a result of Appellees’ failure to establish that the decedent’s death was "virtually certain” within the meaning of section 440.1 l(l)(b)2., we do not discuss R.L. Haines's contentions that Appellees failed to establish the other elements required by section 440.11(1 )(b)2.