# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1355

_____

John Penrod; Gus Erpenbach; Juan Welsh, all individually and on behalf of
themselves and all others similarly situated

*Plaintiffs - Appellants*

v.

K&N Engineering, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 17, 2021
Filed: September 15, 2021

_____

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Plaintiffs are three individuals who purchased oil filters designed by defendant
K&N Engineering, Inc. ("K&N"). They seek to represent a nationwide class of all
purchasers of three styles of K&N oil filters that they allege share a common defect,
although most proposed class members had oil filters that never exhibited the alleged

defect. The district court[1] found that plaintiffs failed to plausibly allege the amount in controversy exceeded $5 million and on that basis concluded that it lacked jurisdiction under the Class Action Fairness Act ("CAFA"). See 28 U.S.C. § 1332(d)(6). Plaintiffs appeal, and we affirm.

## I. BACKGROUND

John Penrod, Gus Erpenbach, and Juan Welsh are the named plaintiffs in this case. Each of them purchased a K&N designed KN-204 oil filter that failed, causing varying levels of damage to their motorcycles. Specifically, in the cases of Penrod and Erpenbach, the failure caused oil to leak onto the rear tire of their motorcycles. In Welsh's case, the failure caused catastrophic damage requiring him to replace his motorcycle's engine at a cost of about $10,000.

Plaintiffs filed suit in the District of Minnesota and sought to represent a broad class of purchasers of three different styles of oil filters designed by K&N and sold throughout the United States. Plaintiffs allege that K&N failed to disclose a structural and manufacturing defect that can cause these oil filters to suddenly separate or fracture. According to plaintiffs, the defect made the oil filters susceptible to failure and increased the risk of catastrophic failure such that, had K&N disclosed the defect, purchasers would have found the risk unacceptable. Because of the defect, plaintiffs claim they either paid too much for their filters or would not have purchased them at all. While the named plaintiffs purchased oil filters that failed, their proposed class includes purchasers whose oil filters never failed.

Plaintiffs assert a number of different tort claims, including breach of warranty, fraud, negligence, and strict liability. Each claim is dependant upon CAFA as the

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

source of federal jurisdiction. The district court found that plaintiffs' reliance on CAFA was ineffectual because they failed to plausibly plead an aggregate amount in controversy exceeding $5 million. In particular, the court accepted as plausible plaintiffs' estimation of 2.5 million oil filters sold during the class period. Plaintiffs estimate that only 3/100ths of 1% of the oil filters at issue failed. With approximately 750 alleged defective oil filters, the damages must exceed $6,666.66 per oil filter failure to meet the jurisdictional threshold. The court found plaintiffs' assumption that each defective filter caused $10,000 in damages was not plausible and neither was $6,666.66 per failure. Plaintiffs appeal, arguing they plausibly pleaded an amount in controversy in excess of $5 million.

## II.    ANALYSIS

Under CAFA, federal courts have jurisdiction over class actions in which the amount in controversy plausibly exceeds $5 million in the aggregate. 28 U.S.C. § 1332(d)(6); see also Raskas v. Johnson & Johnson, 719 F.3d 884, 888 (8th Cir. 2013) (noting the proponent of federal jurisdiction must plausibly explain how the damages exceed $5 million). We review *de novo* a district court's determination regarding whether CAFA's jurisdictional threshold has been satisfied. Raskas, 719 F.3d at 886.

The district court found that most of plaintiffs' proposed class members did not suffer any cognizable injuries or damages, and that the remaining class members did not plausibly allege damages in excess of $5 million. Plaintiffs contend the district court erred in its analysis because the proper measure of damages is the monetary difference between what the proposed class members should have paid for the potentially defective oil filters, in  light of the design defect and increased risk of catastrophic failure, and what they actually paid for them.

Plaintiffs' contention is unavailing and contrary to the long-standing rule that no tort claim for economic damages lies when a product is merely at risk of failing. In Briehl v. General Motors Corp., 172 F.3d 623 (8th Cir. 1999), for example, this Court concluded that a purported class of General Motors vehicle owners had failed to state a claim for relief when the alleged defect in the braking system had not manifested itself in the vehicles they owned. Id. at 628. Similarly, in O'Neil v. Simplicity, Inc., 574 F.3d 501 (8th Cir. 2009), the plaintiffs brought suit against a crib manufacturer premised on an alleged hardware defect in a crib that "made it possible for the drop-side to detach from the crib, creating a dangerous gap in which a child could get caught." Id. at 502. The Court reiterated that no cause of action lies for products merely at risk for manifesting a defect. Id. at 503. Under our precedent, a cognizable tort claim arises when a defective product has actually malfunctioned or failed, not merely when a defect poses a risk or possibility of injury or damage.

According to its plain language, plaintiffs' complaint alleges a defect in the oil filters makes them "susceptible" or at "risk" to fail. See Am. Compl. at ¶ 3 (alleging oil filters "can suddenly" fail); at ¶ 90 (alleging oil filters possess a "trait rendering them susceptible to failure"); at ¶ 94 (alleging that if the "defective nature" of the oil filters was disclosed to plaintiffs, they "would not have accepted the risk of sudden failure of the oil filter"). Oil filters being susceptible to fail, or at risk of failing, is not the same thing as being sure to fail. Cf. In re Zurn Pex Plumbing Prod. Liab. Litig., 644 F.3d 604, 617 (8th Cir. 2011).

Plaintiffs' theory that every proposed class member sustained damages fails in light of their complaint and our precedent. The class members whose oil filters never failed have not sustained injury or damages and cannot assist plaintiffs in meeting the $5 million jurisdictional threshold. Without these "losses" to aggregate, plaintiffs do not plausibly allege an amount in controversy in excess of $5 million.

Whether the analysis is under Article III standing, see In Re: Polaris Mktg., Sales Pracs., & Prods. Liab. Litig., No. 20-2518, __ F.4th __, 2021 WL 3612758 (8th Cir. Aug. 16, 2021), or plaintiffs' inability to plausibly plead $5 million in damages under CAFA is a somewhat academic question in this particular case. Here, the determinative issue is whether the plaintiffs have alleged an injury sufficient to confer jurisdiction. In order for us to have jurisdiction under CAFA, there must be a plausible allegation of $5 million in damages. It is indisputably true that some of the proposed class members lack standing. See In Re: Polaris, 2021 WL 3612758, at *3 (concluding that the seven purchasers of Polaris off-road vehicles that have not exhibited the alleged defect—the accelerated degradation of parts caused by allegedly excessive heat—have alleged nothing more than the existence of a product that is at risk for manifesting a defect, which is not an injury sufficient to confer standing). That said, how many of the proposed class members lack standing is a question that need not be decided by us because the determinative jurisdictional question is whether the plaintiffs have plausibly alleged $5 million in damages, as most of their proposed class members have no injury.

Plaintiffs rely on various contract cases and theories to argue that the uninjured class members do, in fact, have cognizable injuries. The plaintiffs, however, have not alleged a claim for breach of contract in their complaint. They cannot now recast their product liability claim into a non-existent breach of contract claim. Plaintiffs also refer to an alleged economic injury that was suffered based on the difference in the price between the defective oil filter and a non-defective one. This is an argument based in contract. In rejecting a similar argument in O'Neil, the Court noted that until the product fails or causes injury, the purchasers of the drop-side crib have received the benefit of their bargain. O'Neil, 574 F.3d at 504; see In Re: Polaris, 2021 WL 3612758, at *3. While the Court characterized the O'Neil plaintiffs as "no-injury" plaintiffs and the Polaris plaintiffs as "no-fire purchasers," despite having alleged "benefit of the bargain" damages (as in this case), the Court determined the plaintiffs had not stated a claim or suffered an injury in fact because they had not alleged the

product had failed. O'Neil,574 F.3d at 502–05; In Re: Polaris, 2021 WL 3612758, at *3.

Here, most of the oil filters at issue never failed. The filters are like the drop-side crib in O'Neil and the off-road vehicles in Polaris that were at risk of failing, but did not. Plaintiffs have not stated a products liability claim, and they cannot "recast their product liability claim in the language of contract" to state a claim. Rivera v. Wyeth-Ayerst Lab'ys., 283 F.3d 315, 320 (5th Cir. 2002); see also Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1030 (8th Cir. 2014) (plaintiffs could not bring suit under CAFA based on a general allegation that the non-kosher status of some packages of beef tainted all of Hebrew National's products).

Excluding the no-injury proposed class members, and even accepting as plausible plaintiffs' estimation that 3/100ths of 1% of the oil filters at issue were defective and failed (750 oil filters), they simply cannot meet the jurisdictional threshold for damages. Of the three named class members, only one sustained engine failure that cost $10,000. The filter failure on the other two motorcycles resulted in oil leaking onto their rear tires. Contrary to plaintiffs' argument, this situation is not similar to George v. Omega Flex, Inc., 874 F.3d 1031 (8th Cir. 2017) (per curiam), in which diminution in value could be appropriate. The plaintiffs in George alleged corrugated stainless steel tubing installed in their buildings for distribution of natural or propane gas caused their buildings to be susceptible to failure when exposed to electrical arcing or direct or indirect lightning strikes. This Court determined that the plaintiffs had standing to bring a claim based on diminution in value. Here, at issue is a consumable K&N oil filter that failed occasionally or was otherwise used for its normal life and replaced with a different oil filter as scheduled. The putative class members' motorcycles are not now worth less due to their use of a particular K&N oil filter. This situation is different in both kind and degree from owning a building whose value is permanently decreased due to faulty tubing.

Lastly, we reject plaintiffs' argument that separately analyzing their claims under state consumer protection laws impacts the analysis. Plaintiffs' complaint still fails to plausibly allege damages to satisfy the jurisdictional threshold. As to plaintiffs' proposed Oregon subclass, Oregon's Unlawful Trade Practices Act ("UTPA") allows consumers to recover $200 in statutory damages if an individual suffers an "ascertainable loss." See Or. Rev. Stat. § 646.638(1). Because most of the putative class members did not suffer any loss, they got what they bargained for. They did not suffer an "ascertainable loss" entitling them to recover under Oregon's UTPA. See Simonsen v. Sandy River Auto, LLC, 413 P.3d 982, 985 (Or. Ct. App. 2018) (loss under Oregon's UTPA occurs whenever a consumer has received something other than what he bargained for). With regard to the Minnesota and Missouri subclasses, even assuming a viable claim, plaintiffs do not plead any facts regarding the size of these subclasses and, as pled, it is impossible for us to conclude that plaintiffs have plausibly alleged the requisite amount of damages. Given that we know nothing about the size of two of the subclasses and the Oregon statute requires an "ascertainable loss," we do not find jurisdiction plausible in the three subclasses.

## III. CONCLUSION

Plaintiffs' complaint does not plausibly allege damages in excess of $5 million. The federal courts are without CAFA jurisdiction to redress their defective product claims. We affirm the judgment of the district court.

_____