# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-1918

_____

NORA LaFRENIERE, Vice
President and General Counsel
of Otis Elevator Company,

     Appellant,

     v.

CATHERINE CRAIG-MYERS,
Individually and as Personal
Representative of the Estate of
Robert Myers,

     Appellee.

_____

On appeal from the Circuit Court for Leon County.
Karen Gievers, Judge.

December 28, 2018

B.L. THOMAS, C.J.

The trial court's non-final order denied Appellant's motion to dismiss the amended complaint. Appellant argues that the corporate shield doctrine bars the trial court from exercising personal jurisdiction over a nonresident corporate officer acting in a corporate capacity, and that the amended complaint fails to allege a basis for personal jurisdiction under Florida's long-arm statute sufficient to pierce that corporate shield. We have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(i). We hold that the trial court erred in denying Appellant's motion to dismiss, because Appellant was acting in a

corporate capacity at all relevant times, and no valid exception to the corporate shield doctrine applies in this case.

Robert Myers, an employee of Otis Elevator Company, was tragically killed while conducting an elevator inspection and repair. Separate investigations were conducted by the Tallahassee Police Department and the Occupational Safety and Health Administration ("OSHA"). OSHA issued four citations to Otis Elevator Company for regulatory violations classified as "serious."

Appellee brought a wrongful death action against Otis Elevator Company and Appellant, alleging that jurisdiction was invoked pursuant to section 768.16, Florida Statutes, "the Florida Wrongful Death Act." Count II of the amended complaint asserted a "Cause of Action for Wrongful Death Damages Against [Appellant] Arising From Criminal Acts Exception to Worker's Compensation Employer/Manager Immunity Provided in Section 440.11(1)(b)2, Florida Statutes." Appellee's amended complaint alleged that the Occupational Health and Safety Act of 1970 requires elevator owners to have their technicians disable elevators using "lockout" or "tagout" procedures before commencing repairs, but that Otis Elevator Company has a policy of requiring its technicians to enter elevator shafts for up to 15 minutes without disabling or tagging out the elevators. The amended complaint described prior instances where OSHA issued citations to Otis Elevator Company for "serious" violations of its elevator regulations.

The amended complaint further alleged that "in the course and scope of her employment as General Counsel and as corporate officer" of Otis Elevator Company, Appellant closely managed, directed, supervised, monitored and controlled in-house and retained counsel, including the following alleged actions taken by legal counsel at Appellant's express direction:

a. actions purposefully taken to intentionally conceal and prevent disclosure of the OSHA citations against Defendant Otis to the public and Otis service technician employees;

b. actions purposefully taken to contest and appeal OSHA citations for the intentional benefit of delay, concealment,

2

misrepresentation and non-disclosure of the . . . risks of serious injury and death to Otis service technician employees from their continued use of the Otis "15 Minute Rule";

c. actions purposefully taken to contest the OSHA citations specifically to prevent subsequent issuance by OSHA of "REPEAT" or "Willful" citations for repeat conduct in subsequent cases . . . . "Repeat" OSHA violations are issued for substantially similar violations occurring within the past three years;

d. actions purposefully taken to conceal from the public and Otis service technician employees that Otis was continuously and purposefully subjecting its service technician employees to continued enforcement of its "15 Minute Rule" with conscious disregard to the . . . risks of serious injury and death.

The amended complaint further alleged that "in the course and scope of her employment," Appellant "did intentionally, consciously and deliberately aid, abet, counsel, command, induce and procure Defendant Otis Elevator Company managers, supervisors, and service technician employees to intentionally and willfully violate" five OSHA provisions, and that she "consciously intended to cause and caus[ed] Otis officers, managers, supervisors and employees to violate" the applicable OSHA regulations. Appellee alleged that the decedent's death was a direct and proximate result of Appellant's conduct.

Further, Appellee alleged that Otis Elevator Company intentionally concealed its contributions to the deaths of its employees and misrepresented to its employees that the previous deaths were solely attributable to employee error, despite federal courts having ruled that the company's policies and 15-minute rule violated OSHA regulations. Appellee alleged that the company "told its employees to continue to follow the deadly dangerous Otis 15-minute rule" and "continued to encourage its employees to intentionally violate OSHA regulations" despite knowing of the court rulings. These allegations placed the blame squarely on Otis Elevator Company; Appellant was not mentioned.

3

Appellant moved to dismiss the amended complaint for lack of personal jurisdiction. She attached an affidavit in support of her motion, attesting that she does not exercise supervisory control over Otis North America's local branch offices. She further stated that although she "may have limited contact on occasion" with Otis North America's outside legal counsel, it is the company's in-house counsel, not Appellant, who directly supervises and controls outside legal counsel.

The trial court held a non-evidentiary hearing on Appellant's motion to dismiss. Appellant argued that Appellee submitted no competing evidence as to jurisdiction; Appellee argued that no competing affidavit or evidentiary hearing was necessary, because Appellant's affidavit failed to refute the alleged bases for personal jurisdiction. The trial court denied Appellant's motion to dismiss. This interlocutory appeal follows.

*Analysis*

An order denying a motion to dismiss for lack of personal jurisdiction is reviewed *de novo*. *Wendt v. Horowitz*, 822 So. 2d 1252, 1256 (Fla. 2002). The facts are to be derived "from the affidavits in support of the motion to dismiss, and the transcripts and records submitted in opposition to the motion to dismiss." *Id.* at 1254. To determine if personal jurisdiction may be exercised over a nonresident defendant, "a court must determine whether sufficient jurisdictional facts are alleged to bring the action within the ambit of Florida's long-arm statute." *Kitroser v. Hurt*, 85 So. 3d 1084, 1087 (Fla. 2012). Florida's long-arm statute is "to be strictly construed, in order to guarantee compliance with due process requirements." *Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 488 So. 2d 83, 87 (Fla. 1st DCA 1986).

Here, neither the amended complaint nor the trial court's order specify which subsection of the long-arm statute provides a basis for jurisdiction. However, even if the appealed order does not state the basis for its decision, personal jurisdiction may be derived from the facts alleged in the complaint. *Allerton v. State Dep't of Ins.*, 635 So. 2d 36, 39 (Fla. 1st DCA 1994).

Florida's long-arm statute contains two provisions that provide a basis for personal jurisdiction – specific jurisdiction and

4

general jurisdiction. Appellee admits that the amended complaint does not support general jurisdiction.

Section 48.193(1)(a), Florida Statutes, confers specific jurisdiction over

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.[1]

### *I. Whether the amended complaint alleged a cause of action arising from a tort committed in Florida*

The corporate shield doctrine provides that personal jurisdiction cannot be exercised over a nonresident corporate employee sued individually for acts performed in a corporate capacity. *Doe v. Thompson*, 620 So. 2d 1004, 1005 (Fla. 1993). "The rationale of the doctrine is 'the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.'" *Id.* at 1006 (quoting *Estabrook v. Wetmore*, 129 N.H. 520, 529 (N.H. 1987)). In *Doe*, the plaintiff brought a gross negligence suit against a chief executive officer, alleging the officer failed to take adequate measures to prevent sexual assault. 620 So. 2d at 1004. The supreme court held that personal jurisdiction was not established, because "[the defendant's] allegedly negligent actions are not

---

[1] Section 48.193(1), Florida Statutes, enumerates other bases for specific jurisdiction, but only subsections (a)1. and (a)2. are relevant here.

alleged to have been taken outside his duties as [the corporation]'s president and chief executive officer; rather, [the plaintiff] alleges that he was acting within the scope of his employment." *Id.* at 1006.

Although the corporate shield doctrine generally insulates any nonresident corporate officer acting on behalf of his employer, an exception exists "[w]here an individual, nonresident defendant *commits negligent acts in Florida*, whether on behalf of a corporate employer or not[.]" *Kitroser*, 85 So. 3d at 1090 (emphasis added). In *Kitroser*, the complaint alleged that "while the [corporate] employees were personally in Florida, each engaged in some form of negligent conduct, either by training or supervision of [the employee] or both, which contributed to [the decedent]'s death." *Id.* at 1089. Because the torts were allegedly committed within the state, the supreme court held that "[t]he corporate shield doctrine, therefore, is inapplicable and does not exclude the [corporate] employees from the exercise of personal jurisdiction by Florida courts." *Id.* The supreme court distinguished *Doe*, reasoning that in that case, the defendant's "out-of-state activities alone did not form a predicate for in-state jurisdiction." *Id.* at 1089. The court reasoned that "[t]o hold otherwise would be tantamount to providing corporate employees with a form of diplomatic immunity." *Id.* at 1090.

Here, all pertinent paragraphs in Appellee's amended complaint alleged that Appellant acted "in the course and scope of her employment and as corporate officer." Thus, the corporate shield doctrine bars the exercise of personal jurisdiction, unless facts alleged in the amended complaint show that Appellant committed a tort in Florida. *Id.* at 1090.

The amended complaint alleged that Appellant "routinely visited and continues to visit Florida . . . in her role as a corporate Vice President of Otis and as General Counsel of Otis," and that she is the Principal on a current contract between Otis Elevator and the Board of County Commissioners in Miami-Dade. In a section titled Parties, the amended complaint alleged that "while physically located inside and outside of Florida," Appellant communicated with outside counsel headquartered in Florida

6

regarding the legal representation of Otis Elevator in various legal matters, including cases of elevator technician deaths.

Although these allegations plainly assert that Appellant visited Florida throughout a span of nine years, none of the allegations suggest that she committed a tort while in the forum state. Although Count II (the sole cause of action against Appellant) alleges that Appellant violated Titles 18 and 29 of the United States Code by aiding, abetting and directing Otis employees to commit OSHA violations, nowhere is it alleged that she was in Florida during the alleged actions.

Although the exception for committing a tort "in Florida" generally requires a defendant's physical presence, the exception may also encompass alleged tortious acts committed outside of Florida, if those acts involved communication directed into Florida for the purpose of committing a fraud, slander, or some other intentional tort. *See Allerton*, 635 So. 2d at 39. In *Allerton*, the defendant was an investment advisor sued for allegedly orchestrating financial schemes. The defendant moved to dismiss the complaint, arguing that the corporate shield doctrine insulated him "because he was acting in an agency capacity for his employer." 635 So. 2d at 39. This Court held that "the facts as alleged in the complaint preclude [the defendant]'s reliance upon the 'corporate shield doctrine[.]'" Id. at 37. The basis for this holding was that the complaint alleged intentional tortious conduct "aimed at a Florida resident," and "[t]he quality and nature of [the defendant's] actions were not so 'random, fortuitous or attenuated' that [he] could not reasonably anticipate being haled into court in Florida." *Id.* at 40 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985)). *See also State, Office of Attorney Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 597 (Fla. 1st DCA 2004) (holding that corporate shield doctrine protects against "untargeted negligence" but not against "intentional tortious acts expressly aimed at the forum state." (quoting *Doe*, 620 So. 2d at 1006 n.1)).

In *Rensin v. State, Office of Attorney General, Department of Legal Affairs*, the complaint alleged that the defendant himself falsely advertised in Florida, solicited business in Florida, and breached contracts with Florida residents; these allegations

satisfied the plaintiff's initial burden to assert a basis for personal jurisdiction. 18 So. 3d 572, 575 (Fla. 1st DCA 2009). This Court elaborated on the intentional-tort exception:

> In each of [the] cases where jurisdiction was found, the plaintiff produced evidence of the specific conduct on the part of the corporate officer that constituted a fraud or intentional tort. In each case, the nonresident corporate officer personally and intentionally engaged in the tortious conduct and the specific conduct of the nonresident corporate officer was calculated to inflict a direct injury upon a resident of Florida.

*Id.* at 575-76. Thus, the conduct alleged must consist of intentional and tortious acts "expressly aimed at" Florida, with knowledge by the defendant that it "would have a potentially devastating impact" upon the victim. *Calder v. Jones*, 465 U.S. 783, 783-84 (1984); *see also Rensin*, 18 So. 3d at 576 ("[T]he specific conduct of the nonresident corporate officer was calculated to inflict a direct injury upon a resident of Florida."); *Goldberg v. United States*, 2014 WL 2573060 at *1, 5 (S.D. Fla. 2014) ("Although Goldberg alleges more than 'untargeted negligence,' he does not allege, argue, nor submit evidence that the [defendants'] conduct was expressly aimed at Goldberg or would have a potentially devastating impact upon Goldberg.").

The threshold question raised is whether the complaint sufficiently states a cause of action for an intentional tort. *See Wendt*, 822 So. 2d at 1260; *Klayman v. Judicial Watch, Inc.*, 2013 WL 4780139 at *1, 5 (Sept. 5, 2013) ("The Court's consideration of whether personal jurisdiction exists . . . must be undertaken in the light of the claims presented, and the Court should therefore first determine whether the Amended Complaint states any claim for relief against the individual defendants, and if so, on what theories."); *8100 R.R. Ave. Realty Tr. v. R.W. Tansill Contr. Co.*, 638 So. 2d 149, 151 (Fla. 4th DCA 1994) ("[T]he sole basis for jurisdiction is that the [appellant] committed a tort in Florida. . . . [W]e must of necessity determine whether [the complaint] states a cause of action in tort, in order to determine jurisdiction.").

The sole cause of action against Appellant is a claim for "Wrongful Death Damages Against [Appellant] Arising From

8

Criminal Acts Exception to Workers' Compensation Employer/Manager Immunity provided in Section 440.11(1)(b)2, Florida Statutes." Section 440.11(1)(b), Florida Statutes, provides that workers' compensation is the exclusive remedy in place of all other liability, except as follows:

> (b)  When an employer commits an intentional tort that causes the injury or death of the employee.  For purposes of this paragraph, an employer's actions shall be deemed to constitute an intentional tort and not an accident only when the employee proves, by clear and convincing evidence, that:
>
> 1.  The employer deliberately intended to injure the employee; or
>
> 2.  The employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was *virtually certain to result in injury or death to the employee*, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.

(Emphasis added).  District courts have discussed the high standard of virtual certainty, stating that to reach this level, "'a plaintiff must show that a given danger will result in an accident every – or almost every – time.'" *R.L. Haines Constr., LLC v. Santamaria*, 161 So. 3d 528, 531 (Fla. 5th DCA 2014) (quoting *List Indus., Inc. v. Dalien*, 107 So. 3d 470, 471 (Fla. 4th DCA 2013)).

The conduct alleged in the complaint was not "virtually certain to result" in death or injury.  Without virtual certainty, the allegations in the amended complaint do not sufficiently state a cause of action alleging an intentional tort as defined in the workers' compensation statute. *Cf. Santamaria*, 161 So. 3d at 531.

Appellee argues that its amended complaint alleged conduct by Appellant that amounted to a first-degree misdemeanor, thereby removing workers' compensation exclusivity as to

Appellant. *See* § 440.11(1)(b), Fla. Stat. However, section 440.11(1)(b) does not declare that criminal conduct by a corporate officer constitutes an intentional tort; it only states that such conduct, if amounting to a first-degree misdemeanor, removes the immunities provided by the workers' compensation statute. *See id.* The question before us is whether Appellant is alleged to have committed an *intentional tort* sufficient to overcome the corporate shield doctrine, not whether Appellant is protected by workers' compensation immunities. Because the amended complaint does not allege that the conduct by Otis Elevator Company was virtually certain to result in injury, it cannot be said that Appellant was a principal to an intentional tort as defined by the workers' compensation statute.

Appellee argues that the amended complaint also alleged fraud intentionally and expressly directed into Florida, thereby alleging an intentional tort sufficient to pierce the corporate shield. However, there is no fraud count in the complaint; in fact, the word fraud is never mentioned in the cause of action against Appellant or in the general allegations. *See 8100 R.R. Ave.*, 638 So. 2d at 151; *see also Reina v. Gingerale Corp.*, 472 So. 2d 530, 531 (Fla. 3d DCA 1985) ("facts constituting fraud must be clearly stated"); *A.S.J. Drugs, Inc. v. Berkowitz*, 459 So. 2d 348, 349 (Fla. 4th DCA 1984) (holding that fraud requires a knowingly false statement, an intent that it be acted on, and detrimental reliance); Fla. R. Civ. P. 1.120(b) (describing Florida's heightened pleading requirements for fraud actions).

The amended complaint alleged that Otis Elevator Company knowingly made false statements to its employees and the public by stating that the company "stands behind its policies and procedures with respect to employee safety and believes they are consistent with applicable OSHA regulations." Although the amended complaint alleged that Appellant controlled the actions of retained legal counsel and supervisors, it does not allege that Appellant personally made any false statements or that she instructed anyone else to make a false statement; the complaint only alleges that Appellant directed the company to take actions "to intentionally conceal" OSHA citations.

Even accepting these allegations as true, as we must, this alleged direction by Appellant could be satisfied by the company doing nothing at all; e.g., not publishing a report on the citations or not holding safety meetings. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) ("[C]ourts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."); *cf. Morales v. Racetrac Petroleum, Inc.*, 2017 WL 6320299 at *1, 2 (M.D. Fla. Dec. 11, 2017) (dismissing complaint alleging intentional-tort exception to workers' compensation immunity, because the complaint's vague and conclusory allegations "merely recite the elements of the intentional tort exception without providing facts from which the Court could draw a favorable instance"). Without clearly stated allegations asserting that Appellant "personally and intentionally engaged in the tortious conduct," we cannot say that "the specific conduct of the nonresident corporate officer was calculated to inflict a direct injury upon a resident of Florida." *Rensin*, 18 So. 3d at 576. In the absence of an intentional tort, Appellee cannot rely on the intentional-tort exception to the corporate shield doctrine.[2]

## II. Whether the amended complaint alleged a cause of action arising from a business venture in Florida

Section 48.193(1)(a)1. confers jurisdiction where a complaint alleges facts stating a cause of action that arises from "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." § 48.193(1)(a)1., Fla. Stat. When a defendant contests a complaint's jurisdictional allegations, or the minimum contacts supporting jurisdiction, he or she "must file an affidavit in support of his or her position. The burden is then placed upon the plaintiff to show by counter-affidavit the basis upon which jurisdiction is

---

[2] Because the amended complaint fails to assert a basis for long-arm jurisdiction in the absence of alleging an intentional tort, we need not address whether Appellant's affidavit refutes the allegations, or whether Appellant has minimum contacts sufficient to satisfy due process. *See Doe*, 620 So. 2d at 1005.

11

obtained." *Doe*, 620 So. 2d at 1005. "If the affidavits can be harmonized, the court can resolve the jurisdiction issue based upon the undisputed facts. If not, 'the trial court [must] hold a limited evidentiary hearing in order to determine the jurisdiction issue.'" *Schwartzberg v. Knobloch*, 98 So. 3d 173, 178 (Fla. 2d DCA 2012) (quoting *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502-03 (Fla. 1989)).

Here, Appellant submitted an affidavit attesting that she resides in Connecticut and is licensed to practice law in Connecticut and Maryland. She stated that at no time has she: had a usual place of abode in Florida; had a personal bank account in Florida; had a personal phone number in Florida; owned real property in Florida; filed a personal tax return in Florida; or had a business office in Florida. She attested that she never served as general counsel for Otis North America (a subsidiary of Otis Elevator Company alleged to have relocated to Florida) or supervised Florida branch offices, and that any work she performed in Florida was in her capacity as a corporate officer.

Appellant's sworn statements refute any allegation asserting a "business venture" basis for jurisdiction, thereby shifting the burden back to Appellee. *Cf. Doe*, 620 So. 2d at 1005. Although Appellant admitted signing the company's annual report submitted to the Florida Secretary of State, this is insufficient to establish jurisdiction, as the cause of action does not arise from this contact. *See Carter v. Estate of Rambo*, 925 So. 2d 353, 356 (Fla. 5th DCA 2006).

Appellee's response in opposition to Appellant's motion to dismiss merely reasserted the allegations in the amended complaint and referred to admissions in Appellant's affidavit. *See Goldberg*, 2014 WL 2573060 at *3 (to prevail after a defendant refutes allegations, a plaintiff must do more than "'merely reiterate the factual allegations in the complaint'" (quoting *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1237, 1249 (11th Cir. 2000)). Although Appellee's response refers to exhibits attached to the amended complaint, none of the exhibits show personal business ventures. As Appellant's sworn affidavit refuted any allegations of a personal business office or personal business venture, and as Appellee presented no evidence to counter that

12

affidavit, there was no basis for the trial court to exercise specific jurisdiction under section 48.193(1)(a)1., Florida Statutes.

The corporate shield doctrine bars Florida courts from exercising personal jurisdiction over Appellant. We thus reverse and remand with directions to the trial court to enter an order dismissing the amended complaint as to Appellant.

REVERSED and REMANDED.

ROBERTS and OSTERHAUS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Kenneth B. Bell and Lauren V. Purdy of Gunster, Yoakley & Stewart, P.A., Tallahassee, for Appellant.

Philip J. Padovano of Brannock & Humphries, Tallahassee, and Maegen Peek Luka of Brannock & Humphries, Tampa; Sidney L. Matthew of Sidney L. Matthew, P.A., Tallahassee, for Appellee.