[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11124

Non-Argument Calendar

_____

SHANE VILLARINO,
an individual,
LAURA J. JOHNSON,
an individual, on behalf of themselves,
and all others similarly situated,
WALTER STRONG,

Plaintiffs-Appellants,

*versus*

KENNETH JOEKEL,
an individual,
MARC PLOTKIN,
an individual,
PACESETTER PERSONNEL SERVICE, INC.,

2                    Opinion of the Court                    24-11124

A Texas profit corporation,

PACESETTER PERSONNEL SERVICE OF FLORIDA, INC.,

a Florida profit corporation,

FLORIDA STAFFING SERVICE, INC.,

a Florida profit corporation,

TAMPA SERVICE COMPANY, INC.,

A Florida profit corporation,

d.b.a. Pacesetter,

d.b.a. Pacesetter Personnel,

d.b.a. Pacesetter Personnel Service,

d.b.a. Pacesetter Personnel Services,

d.b.a. Pacesetter Personnel Services, LLC,

d.b.a. PPS,

d.b.a. FW Services,

                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:23-cv-61003-KMM

_____

Before ROSENBAUM, LAGOA, and ABUDU, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Shane Villarino, Laura Johnson, and Walter Strong appeal the dismissal of their amended complaint with prejudice for improper claim splitting, and the dismissal of two individual defendants for lack of personal jurisdiction. Appellants contend that the district court erred in failing to address its subject-matter jurisdiction before dismissing the case with prejudice, that the court erroneously applied the claim-splitting doctrine, and that their allegations were sufficient to establish personal jurisdiction over the individuals under Florida's long-arm statute. We agree that the court failed to resolve disputed issues of its subject-matter jurisdiction before dismissing the action in part with prejudice, so we vacate and remand for further proceedings. We affirm the dismissal for lack of personal jurisdiction.

## I. BACKGROUND

Appellants are daily unskilled laborers ("day laborers") who were employed by Pacesetter[1], a temporary staffing agency, at its labor hall located on East Commercial Boulevard in Fort Lauderdale (the "Labor Hall"), from January 29, 2016, until the location's closure in February 2021. Appellants allege that Pacesetter failed to provide restroom facilities and drinking water for workers at the Labor Hall, in violation of the Florida Labor Pool Act ("FLPA"),

---

[1] According to Appellants, the named corporate defendants—Pacesetter Personnel Service, Inc.; Pacesetter Personnel Service of Florida, Inc.; Florida Staffing Service, Inc.; and Tampa Service Company—jointly conducted business as Pacesetter.

Fla. Stat. § 448.24.  We begin by reviewing the somewhat complicated procedural history of this case.

### A.  *Villarino I*

In January 2020, Appellants Villarino and Johnson, and two other individuals, sued Pacesetter in federal court in the Southern District of Florida, on behalf of themselves and all others similarly situated.  In a four-count amended complaint, the plaintiffs alleged minimum and overtime wage violations under federal and Florida law (Counts I–III), and violations of the FLPA for charging unauthorized or excessive fees and failing to provide workers with restroom facilities and drinking water at the Labor Hall (Count IV).  The case was assigned to U.S. District Judge Raag Singhal, under case no. 0:20-cv-60192 ("*Villarino I*").

As litigation progressed, the district court rebuffed the plaintiffs' attempts to certify an expansive collective or class action.  Rather, in orders entered in March 2021 and May 2022, the court limited the proposed classes to individuals who had been employed at the Labor Hall, not just employed by Pacesetter.  As relevant here, in May 2022, the court granted conditional certification for a class covering the potential water-and-bathroom violations at the Labor Hall from January 29, 2016, until the location's closure in February 2021.

Then, in January 2023, the district court granted Pacesetter summary judgment on all claims but Count IV.  The court found "a genuine dispute as to whether Pacesetter provided restrooms and drinking water" at the Labor Hall.

After granting summary judgment, the district court asked the parties whether it should retain supplemental jurisdiction over the FLPA claims in Count IV.  In a joint notice filed on January 20, 2023, the parties said they had "conferred regarding the issue of whether the Court should retain supplemental jurisdiction in this case as to the state law claims still at issue and are in agreement that the Court should do so."

But the plaintiffs reversed their position about two weeks later, after the court had denied reconsideration of the class-certification issues.  In a new notice, the plaintiffs asserted that, since "no federal claims remain at issue in this action, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims."  Pacesetter filed a response in opposition, maintaining its "position that the Court should retain supplemental jurisdiction" and accusing the plaintiffs of "blatant forum shopping."

In February 2023, the district court entered an order decertifying the Labor Hall class.  The court found that it would be impossible to establish Article III standing on a class-wide basis, explaining that, "[a]lthough the jury can determine in one fell swoop whether Pacesetter supplied restrooms or water on a given day, determining whether a particular worker suffered a concrete injury would require individualized trials."

Finally, a couple weeks after the decertification order, the district court entered an order declining to exercise supplemental jurisdiction over the FLPA claims.  The court reasoned that, while the case was "set for trial in little more than 30 days and has been

6                    Opinion of the Court                    24-11124

pending since January 2020," the "discovery already produced can be used in state court," and "federalism concerns of federal courts of limited jurisdiction weighing in on state law tip the factors in favor of dismissing the remaining state-law claim" (quotation marks omitted).  Accordingly, the district court ordered that Count IV was "DISMISSED WITHOUT PREJUDICE."  The court also entered final judgment on the remaining claims.

The plaintiffs appealed the certification orders and summary-judgment ruling.  It does not appear the appeal involves the alleged water-and-bathroom FLPA violations.  No appeal was taken from the decertification order or the dismissal without prejudice.

## B.  *Villarino II*

In March 2023, Appellants Villarino and Johnson refiled the FLPA claims in Florida state court, limited to the Labor Hall class that had been certified by Judge Singhal, before being decertified based on class-wide standing concerns.  The renewed complaint added two individuals as defendants, Kenneth Joekel and Marc Plotkin, who were citizens of Texas and who allegedly owned and operated the Labor Hall.

Two months later, Pacesetter removed the action to the Southern District of Florida, invoking federal diversity jurisdiction under the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1332(d)(2).  CAFA grants federal jurisdiction over class actions if the class has more than 100 members, the parties are minimally diverse, and the aggregate amount in controversy exceeds $5

million. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014). Pacesetter's notice of removal asserted that the amount in controversy exceeded $5,000,000, given allegations that the class exceeded 3,800 individuals and that each violation resulted in consequential damages or penalties of $1,000, whichever was greater, combined with the possibility of multiple violations. The case was assigned to U.S. District Judge K. Michael Moore, under case no. 0:23-cv-61003 ("*Villarino II*").

In June 2023, Villarino and Johnson moved to remand the action for lack of subject-matter jurisdiction. They argued, among other things, that Pacesetter could not establish that the amount in controversy exceeded $5 million, citing Judge Singhal's prior finding that the class claims could not be maintained in federal court for reasons of Article III standing. Pacesetter opposed remand, asserting that removal was proper based on CAFA diversity jurisdiction.

In October 2023, the district court granted the defendants' motions to dismiss. The court found that personal jurisdiction was lacking over Joekel and Plotkin. And it reasoned that the action was otherwise due to be dismissed for improper claim splitting, in light of *Villarino I* and the pending appeal. Accordingly, the court dismissed the complaint without prejudice, but with leave to amend. It appears the court denied the motion to remand as moot.

Appellants filed an amended complaint—naming Strong as a class representative along with Villarino and Johnson—and expanding on the allegations against the individual defendants, Joekel

and Plotkin. According to the pleading, Joekel, as sole owner of Pacesetter, and Plotkin, as the "senior operations employee," jointly ran day-to-day operations for Pacesetter entities. Plotkin visited Florida on Pacesetter business four or five times per year, including multiple visits to the Labor Hall, and, according to the pleading, he had actual knowledge of the ongoing FLPA violations. The plaintiffs admitted that the court had jurisdiction under CAFA only to the extent the court found that each member of the proposed classes had Article III standing.

The district court again granted the defendants' motions to dismiss. The court reasoned that the amended complaint still failed to plead grounds for exercising personal jurisdiction over Joekel and Plotkin, finding that they acted only in their corporate capacities and finding no exception applicable.

The district court further concluded that the amendments did not save the amended complaint from dismissal for improper claim splitting. The court found that the parties were the same because the new plaintiff Strong was part of the decertified class in *Villarino I*. And it reasoned that, despite the lack of final judgment on the FLPA claims, the rule against claim splitting applied because the prior and present cases (1) involved the same parties and their privies and (2) arose from the same transaction or series of transactions. The court declined to consider Pacesetter's arguments that *res judicata* barred the action. This appeal followed.

## II. STANDARDS OF REVIEW

"We review *de novo* whether a district court had federal subject matter jurisdiction following removal." *Lindley v. F.D.I.C.*, 73 F.3d 1043, 1049–50 (11th Cir. 2013) (quotation marks omitted). Likewise, we review *de novo* whether the district court has personal jurisdiction over a nonresident defendant. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

## III.  SUBJECT-MATTER JURISDICTION

The "federal courts are courts of limited jurisdiction," powerless to act outside the scope of their statutory authority. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409–10 (11th Cir. 1999). A court "first must determine whether it has original jurisdiction over the plaintiff's claims" before it "may proceed to the merits of the case." *Id.* at 410. Thus, the district court has an "independent obligation to make sure that it ha[s] subject-matter jurisdiction, and standing is a part of subject matter jurisdiction." *Ladies Mem'l Assoc., Inc. v. City of Pensacola, Fla.*, 34 F.4th 988, 994 (11th Cir. 2022).

"A defendant seeking to remove a case to federal court must file a notice of removal that includes a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019). When the plaintiff disputes the notice of removal's allegations, "the district court must find by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912–13 (11th Cir. 2014) (quotation marks omitted). As the party asserting federal jurisdiction, "the removing party bears the burden of proof to establish by a

preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." *Id.* Post-removal events, such as the "possibility that the putative class will not be certified," are "irrelevant to the jurisdictional determination, which is based only on the facts as they exist at the time of removal." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 772 (11th Cir. 2010).

Here, Pacesetter's notice of removal asserted federal jurisdiction under CAFA, citing the class allegations from the amended complaint. *See* 28 U.S.C. § 1332(d)(2). CAFA grants federal jurisdiction over a class action if the class has more than 100 members, the parties are minimally diverse, and the aggregate amount in controversy exceeds $5 million. *Dart Cherokee*, 574 U.S. at 84–85. But Appellants' motion to remand disputed, among other things, Pacesetter's allegation that the amount in controversy exceeded $5 million, given Judge Singhal's prior finding that the FLPA class claims could not be maintained in federal court for reasons of Article III standing. *Cf. Penrod v. K&N Eng'g, Inc.*, 14 F.4th 671, 674 (8th Cir. 2021) ("The class members whose oil filters never failed have not sustained injury or damages and cannot assist plaintiffs in meeting the $5 million jurisdictional threshold.").

Under these circumstances, the district court erred by failing to resolve its subject-matter jurisdiction before dismissing Appellants' claims with prejudice. *See Univ. of S. Ala.*, 168 F.3d at 409–10. Because Appellants disputed the notice of removal's allegation, "[i]t then fell to the district court to discern whether the amount in controversy had been established." *Dudley*, 778 F.3d at 912–13. But

the court did not make any findings that the aggregate amount in controversy exceeded $5 million at the time of removal. *See Pretka*, 608 F.3d at 772. Thus, we vacate the grant of Pacesetter's motion to dismiss, and we remand for further proceedings consistent with this opinion. *See Smith v. State of Georgia*, 684 F.2d 729, 735 (11th Cir. 1982) ("Where, as here, the district court did not make a specific finding as to an essential fact, it is appropriate to remand for further findings so that we may then exercise a meaningful review."); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1321 (11th Cir. 2001) (remanding for factual findings on the amount in controversy).

Pacesetter suggests that Appellants either admitted or waived subject-matter jurisdiction, but we disagree. Appellants' amended complaint did not "admit[] the existence of subject matter jurisdiction," as Pacesetter asserts. Rather, the pleading maintained Appellants' position that jurisdiction was lacking unless the court agreed that class members had Article III standing. What's more, "parties cannot waive subject matter jurisdiction, and we may consider subject matter jurisdiction claims at any time during litigation." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999). So Appellants' failure to renew the motion to remand after it was denied as moot does not preclude our consideration of subject-matter jurisdiction on appeal.

## IV. CLAIM SPLITTING

Appellants also contend that the district court erred in applying the rule against claim splitting, which generally "requires a

plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021). They contend that the doctrine does not apply because the court in the first action expressly dismissed the claim without prejudice so that they could continue litigation in state court. *See* Restatement (Second) of Judgments § 26(1)(b) (Am. L. Inst. 1980) (listing an exception to the general rule against claim splitting where "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action").

Because we vacate the judgment and subject-matter jurisdiction remains in dispute, we do not decide at this time whether, if jurisdiction existed, the court correctly dismissed Appellants' claims with prejudice for improper claim splitting. *See Shultz v. Fla. Keys Dive Ctr., Inc.*, 224 F.3d 1269, 1272 (11th Cir. 2000) ("We, of course, cannot assume without deciding a jurisdictional issue to decide a case that would not otherwise be before the court.").

## V.  PERSONAL JURISDICTION

Nonetheless, any lack of subject-matter jurisdiction does not negate the district court's power to dismiss for personal jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (explaining that courts generally may "choose among threshold grounds for denying audience to a case on the merits," including dismissal for lack of personal jurisdiction); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[T]here is no mandatory sequencing of jurisdictional issues.") (quotation marks omitted).

For a federal court sitting in diversity, the law of the state in which it sits must authorize jurisdiction over the nonresident defendant. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). In this case, we look to Fla. Stat. § 48.193, known as Florida's long-arm statute. *See Louis Vuitton*, 736 F.3d at 1350, 1352. "The reach of Florida's long-arm statute is a question of Florida law." *Id*. at 1352. We must apply the long-arm statute "as would the Florida Supreme Court," and we adhere to the interpretations offered by the Florida District Courts of Appeal "absent some indication that the Florida Supreme Court would hold otherwise." *Id*. (quotation marks omitted).

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Id*. at 1350 (quotation marks omitted). We generally "accept as true the allegations in the complaint." *Id*. But "vague and conclusory allegations" do not suffice. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).

Under Florida's long-arm statute, a person is subject to the jurisdiction of Florida courts "for any cause of action arising from" certain listed conduct, including: "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state," Fla. Stat. § 48.193(1)(a)(1); "[c]ommitting a tortious act within this state," *id*. § 48.193(1)(a)(2); and "[c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, . . .

[t]he defendant was engaged in solicitation or service activities within this state," *id.* § 48.193(1)(a)(6).

The district court found that it did not have personal jurisdiction over the individual defendants because they were protected by the corporate-shield doctrine. "Under the corporate shield doctrine, the actions of a corporate employee in a representative capacity do not form the basis for jurisdiction over the corporate employee in their individual capacity." *Harrison v. NC3 Sys., Inc.*, 395 So. 3d 657, 663 (Fla. Dist. Ct. App. 2024). "The rationale of the doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993) (quotation marks omitted); *see id.* (finding no personal jurisdiction where the defendant's "allegedly negligent actions are not alleged to have been taken outside his duties as [the corporation]'s president and chief executive officer").

Nonetheless, the corporate-shield doctrine does not protect "a corporate officer who commits fraud or other intentional misconduct outside of Florida." *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 n.3 (Fla. 2012). Nor does the corporate-shield doctrine operate as a bar to personal jurisdiction "[w]here an individual, nonresident defendant commits negligent acts in Florida, whether on behalf of a corporate employer or not." *Id.* at 1090. So "if one is personally present in Florida and commits a tort in Florida, one is subject to

the personal jurisdiction of Florida courts," notwithstanding the corporate shield doctrine. *Id.* at 1089.

Here, the district court properly found that it lacked personal jurisdiction over the individual defendants under the corporate-shield doctrine. Apart from vague and conclusory assertions, which need not be credited, *see Snow*, 450 F.3d at 1318, the amended complaint fails to establish that the individual defendants took any action "on their own account in the state, as opposed to engaging in business as representatives of the corporation." *Excel Handbag Co., Inc. v. Edison Bros. Stores, Inc.*, 428 So. 2d 348, 350 (Fla. Dist. Ct. App. 1983). In other words, their liability was "based on their strictly corporate acts" as agents or owners of Pacesetter, which is insufficient for personal jurisdiction over nonresident individuals. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996); *see Doe*, 620 So. 2d at 1006. So we cannot say that the individual defendants were personally engaged in business, solicitation, or service activities "so as to be individually subject to the state's long-arm statute." *Excel Handbag*, 428 So. 2d at 350; *see Harrison*, 395 So. 3d at 663.

Appellants claim that the corporate-shield doctrine does not apply because the individual defendants committed a tort in Florida. But their allegations do not fall within any recognized exception. Although the amended complaint alleged that Plotkin visited Florida four to five times per year on Pacesetter business, including multiple visits to the Labor Hall, "none of the allegations suggest that [he] committed a tort while in the forum state." *LaFreniere v.*

*Craig-Myers*, 264 So. 3d 232, 238 (Fla. Dist. Ct. App. 2018). Nor do the allegations reflect that Joekel, as owner, was "present in Florida and commit[ted] tortious acts in-state." *Kitroser*, 85 So. 3d at 1089.

We also reject Appellants' reliance on the exception to the corporate-shield doctrine for "fraud or other intentional misconduct outside of Florida." *Id.* at 1088 n.3. To fall within this exception, the corporate officer generally must have "personally and intentionally engaged" in conduct that "was calculated to inflict a direct injury upon a resident of Florida." *LaFreniere*, 264 So. 3d at 239 (quotation another source). The "threshold question" in applying this exception is "whether the complaint sufficiently states a cause of action for an intentional tort." *Id.*

Appellants claim that their allegations satisfy the elements of a claim for intentional infliction of emotional distress. But they did not attempt to plead a cause of action for intentional infliction of emotional distress in the amended complaint. The sole claims alleged were for failure to provide drinking water and bathrooms for day workers at the Labor Hall, in violation of the FLPA. Because the complaint did not state a cause of action for an intentional tort, the district court did not err in finding that the corporate-shield doctrine barred personal jurisdiction over Joekel and Plotkin. *See LaFreniere*, 264 So. 3d at 239.

Finally, Appellants suggest that personal jurisdiction over Joekel and Plotkin arises under the FLPA, because that Act allows for individual liability. *See* Fla. Stat. § 448.22(1)–(4). But we agree with the district court that, at least in the circumstances presented

here, the FLPA does not create individual liability for owners or agents of corporate-owned labor pools. Notably, the amended complaint did not plausibly allege that Joekel and Plotkin individually constituted "business entit[ies]" that operated the Labor Hall. Rather, as we noted above, the allegations reflect that they acted solely as owners or representatives of Pacesetter, which operated the Labor Hall. Appellants fail to show that the FLPA's general allowance for individual liability translates to personal jurisdiction over the specific individuals in this case.

## VI. CONCLUSION

For these reasons, we vacate the dismissal with prejudice of Appellants' amended complaint against Pacesetter, and we remand for further proceedings consistent with this opinion. We affirm the dismissal of the individual defendants, Joekel and Plotkin, for lack of personal jurisdiction.

**VACATED AND REMANDED in part; AFFIRMED in part.**